STATE ex rel. SHAPLEY *v.* BOARD OF COMMIS-
SIONERS OF YELLOWSTONE COUNTY.

[Submitted September 16, 1892.   Decided September 26, 1892.]

12  503
24  231

TAXATION— *Schools* — *County commissioners* — *Levy to pay judgment.* — Under the
Constitution and statutes of this State, relating to revenue and schools, the
commissioners of a county have power to levy a tax on the taxable property of
a school district within their county, to satisfy a judgment against the trustees
of such district, where the funds under the control of such district are insuf-
ficient to pay the same, and mandamus will lie to compel such levy without a
statute expressly authorizing county commissioners to make an assessment for
such purposes.

SAME — *Mandamus* — *Assessment roll* — *County commissioners.* —The board of county
commissioners are responsible for the correctness of the assessment roll, which
record should contain the information essential to enable the board to levy a
special tax upon the property of a school district, and it is therefore no defense
to an application for a writ of mandate commanding the levy of a special tax to
satisfy a judgment against the trustees of a district, that the amount of taxable
property within such district cannot be ascertained from an inspection of the
assessment roll.

Original proceeding.   Application for a writ of mandate.

*Andrew Campbell,* and *Elbert D. Weed,* for Relator.

*Henri J. Haskell,* Attorney-General, and *James R. Goss,* for
Resistant.

BLAKE, C. J. — This is an application for a writ of mandate
to be directed to the board of county commissioners of the
county of Yellowstone, commanding the levy of a special tax
on the property of School District No. 6, for the purpose of satis-
fying a judgment in favor of Louise Shapley.   The following
facts are admitted by the parties: A judgment was obtained
October 29, 1890, in the District Court of the Seventh Judicial
District of the State, by said Shapley, against the board of
trustees of School District No. 6, in the county of Yellowstone,
for the sum of $480, and costs.   No part of this judgment has
been paid, although a demand therefor has been made upon said
board of trustees.   The amount of moneys belonging to said dis-
trict is $340.15, which is insufficient to pay the judgment.   The
relator presented June 7, 1892, a petition, and prayed that the
respondent, " while levying taxes for county and school purposes
for the year 1892, cause to be levied upon all taxable property
within said School District No. 6 a tax sufficient for paying in

full, and for the purpose of paying in full, the said judgment, cost, and all interest that may be due on the date of the payment of the same, as said trustees had not the funds under their control as such, to pay the same." The petition was then denied. The respondent, for the purpose of establishing and maintaining common schools within the county of Yellowstone, levied August 8, 1892, an annual tax of three mills on the dollar of all its taxable property for the year 1892. Copies of the judgment, a statement of the county treasurer of the amount of funds to the credit of this school district, and said petition, and the proceedings of the said board of county commissioners, are made a part of this application.

The main issue of the law is stated in the following allegation of the pleadings: The application states "that, as affiant is informed and believes, it is the duty of said board of county commissioners, under the provisions of the laws of the State of Montana in such case made and provided, to levy a tax on the taxable property of said school district sufficient to raise funds wherewith to pay the amount of said judgment, interest, and costs, owing and due, according to the terms thereof, at the time when payment is made; which tax should be levied and collected at the time and in the manner provided by law for the levying and collecting of other taxes upon the taxable property of said school district for the present year, A. D. 1892." The answer thereto is as follows: "We deny that it is the duty of this board of commissioners, under the provisions of the laws of Montana, to levy a tax on the taxable property, or any part thereof, of School District No. 6, in the county of Yellowstone, State of Montana, sufficient to raise funds wherewith to pay the amount of said judgment, or any other amount, or the interest thereon, or any part thereof, or the costs, or any part thereof, or to levy any tax whatever on said property of said district, or any part thereof, except under and according to the provisions of sections 1902, 1905, 1906, of the School Laws of Montana, and section 765, fifth division of the Compiled Laws of Montana. This board, further answering, says that it has no power or authority, under the laws of the State of Montana, to levy said tax, or any part thereof, as prayed for in the within petition; that the levying of said tax, as prayed for in said petition, is not

a duty especially enjoined by law upon said board, nor is it a duty of said board, resulting from said office of commissioners of said county of Yellowstone."

The judgment, under the statutes regulating this matter, is a debt of the school district. "Any board of trustees shall be liable, as trustees, in the name of the district, for any judgment against the district for any salary due any teacher on contract, and for all debts legally contracted under the provisions of this article, and they shall pay such judgment or liabilities out of the school moneys to the credit of such district." (Comp. Stats. div. 5, § 1888.) The Constitution points out the mode for the payment of these judgments: "Private property shall not be taken or sold for the corporate debts of public corporations, but the legislative assembly may provide by law for the funding thereof, and shall provide by law for the payment thereof, including all funded debts and obligations, by assessment and taxation of all private property not exempt from taxation within the limits of the Territory over which such corporations, respectively, have authority." (Art. xii. § 8.) The funds of school districts are in the custody of the county treasurer, who is charged with the duty of collecting and disbursing the same. (Comp. Stats. div. 5, § 1867.) The trustees of the school district have no power to levy a tax to secure the money which is necessary to pay the claim of the relator. Their authority is also restricted by the clause providing that they cannot draw a warrant on the county treasurer in favor of any person, "unless there is money in the treasury to the credit of such district." (Comp. Stats. div. 5, § 1869.) We are not aware of any statute which can be invoked by the relator to aid her in the collection of this judgment, through the agency of the trustees of the school district.

What duty has been devolved by law upon the respondent for the assessment of taxes for school uses? The intention of the framers of the Constitution is evident when we compare the following clauses: It is solemnly ordained "that provision shall be made for the establishment and maintenance of a uniform system of public schools, which shall be open to all children of said State of Montana, and free from sectarian control." (Ord. 1, par. 4.) "It shall be the duty of the

legislative assembly of Montana to establish and maintain a
general, uniform, and thorough system of public, free, common
schools." (Art. xi. § 1.) "It shall be the duty of the legis-
lative assembly to provide, by taxation or otherwise, sufficient
means, in connection with the amount received from the gen-
eral school fund, to maintain a public, free, common school in
each organized district in the State, for at least three months in
each year." (Art. xi. § 6.) "Taxes for city, town, and school
purposes may be levied on all subjects and objects of taxation,
but the assessed valuation of any property shall not exceed the
valuation of the same property for State and county purposes."
(Art. xii. § 5. See, also, art. xii. § 8, *supra*.) In pursuance
of this authority, the legislature of the State has provided:
" The assessment made by the county assessor, and that of the
State board of equalization, as apportioned by the board of
county commissioners to each city, town, school, road, or other
district in their respective counties, is the only basis for tax-
ation for the county. . . . . All taxes upon road, school, or
other local districts must be collected in the same manner as
county taxes." (Stats. 2d Sess. p. 92, § 49.) It is further
enacted in the same law that the board of county commissioners
of each county must "fix the rate of county taxes," and "levy
taxes upon the taxable property of the county." (Stats. 2d
Sess. p. 104, § 81.) The following section of the Compiled
Statutes was in force when the Constitution was adopted, and
has not been modified: "For the purpose of establishing and
maintaining common schools, it shall be the duty of the county
commissioners of each county to lay an annual tax of not less
than three, nor more than five, mills on the dollar, on all tax-
able property within their respective counties, as shown by the
assessment rolls made by the county assessor for the same year,
and to include the same in their warrant to the collector; and
the said collector shall proceed to collect the said tax in the same
manner as the other county tax is collected, and the said money
so collected shall be paid over to the county treasurer. . . . ."
(Comp. Stats. div. 5, § 1902.) The board of trustees of each
school district is empowered to submit to the voters thereof
"the question whether a tax shall be raised to furnish additional
school facilities for said district, or to maintain any school or

schools in such district, or for building one or more school-houses, or for removing or building additions to one already built, or for the purchase of globes, maps, charts, books of reference, and other appliances and apparatus for teaching, or for any or all of these purposes. . . . ." (Comp. Stats. div. 5, § 1905.)

The respondent maintains that this application must be denied because there is no statute which declares expressly that the board of county commissioners shall make an assessment for the payment of a judgment against the school district. Viewed abstractly, this proposition is plausible, but the Constitution and revenue system of the State contemplate one mode of satisfying every demand of this nature. (Stats. 2d Sess. *supra.*) The respondent has been clothed with ample authority to levy taxes for the establishment and maintenance of public schools. This judgment is an obligation which has been incurred in accomplishing these objects.

We approve of the doctrines, which have been concisely expressed by Judge Cooley in his treatise on Taxation: "One of the most common cases in which the writ of mandamus is employed in tax matters is where it has become the clear duty of the authorities to levy a tax for general purposes, or for the payment of some demand, and they refuse to do so. In such cases the remedy may be had on behalf of the State or the municipality concerned, or by any individual whose demand the tax should pay. Thus, if one has recovered a judgment against a municipality which can only be paid by means of taxation, the levy of a tax to pay it may, in proper cases, be compelled. It is customary to make express provision by statute for such cases, and, when the statute requires the levy of a tax, the case is clear. When the statute does not expressly require it, the duty may perhaps be equally plain if the munici-. pality has been clothed with the requisite power." (Cooley on Taxation, p. 524, and cases cited.) The last sentence in the quotation from the learned author, and the sections of the Constitution and statutes *supra*, refute the argument of respondent. Taxation must be resorted to in order that a sufficient sum of money may be credited to the school district before the trustees can pay this judgment. We think that the respondent has the power to act in the premises.

The answer alleges the existence of a condition which would render difficult obedience by the respondent to the writ which is asked for: "Respondent further says, upon inspection and examination of said assessment book or roll made by said county assessor of Yellowstone County for the year 1892, and now in the office of the county clerk of said Yellowstone County, said board has not the means of ascertaining the amount of taxable property of said School District No. 6, of said county of Yellowstone, for the year 1892; and, further, has not the means of ascertaining the names of the persons and parties who have property subject to taxation in said School District No. 6; and that said board is unable to levy said special tax for the reason aforesaid." The statutes which bear upon this subject should be noticed: "It shall be the duty of every county superintendent to inquire and ascertain whether the boundaries of school districts in his county are definitely and plainly described in the records of the county board of commissioners, and to keep in his office a full and correct transcript of such boundaries. In case the boundaries of districts are conflicting, or incorrectly described, he shall change, harmonize, and describe them, and make a report of such action to the commissioners, and, on being ratified by the commissioners, the boundaries and descriptions so made shall be the legal boundaries and descriptions of the districts of that county. The county superintendent shall furnish the several district clerks with descriptions of the boundaries of their respective districts." (Comp. Stats. div. 5, § 1874.) The county assessor "must require from each person a statement, under oath, setting forth specifically all the real and personal property owned by such person, or in his possession, or under his control. . . . . Such statement must be in writing, showing separately . . . . the county in which such property is situated, or in which it is liable for taxation, and (if liable to taxation in the county in which the statement is made) also the city, town, school district, road district, or other revenue district in which it is situated." (Stats. 2d Sess. p. 78, § 14.) This officer " must, under the direction of the State board of equalization, prepare an assessment book, with appropriate headings, alphabetically arranged, in which must be listed all property within the county, and in which must be specified, in separate columns, under the

appropriate head: (1) The name of the person to whom the property is assessed. . . . . The school, road, and other revenue districts in which each piece of property assessed is situated." (Stats. 2d Sess. p. 84, § 34.) "The board of county commissioners is the board of equalization, and must meet on the third Monday of July in each year, to examine the assessment book, and adjust and equalize the valuation of the taxable property of the county." (Stats. 2d Sess. p. 96, § 60.) "The board of county commissioners must use the abstract, and all other information it may gain from the records of the county clerk or elsewhere, in equalizing the assessment of the property of the county, and may require the assessor to enter upon the assessment book any property which has not been assessed." (Stats. 2d Sess. p. 99, § 68. See, also, §§ 49, 81, *supra*.) The effect of this legislation is to make the board of county commissioners responsible for the correctness of the assessment book. The respondent has pleaded in this part of the answer its omission of duty. The information which is essential to enable the board to make a proper assessment should appear in the records, which are completed under its supervision. We cannot sustain this defense, which, in substance, would permit the respondent to take advantage of its own negligence or wrong.

It is therefore ordered that a peremptory writ of mandate be issued, according to the prayer of the relator.

*Mandate issued.*

Harwood, J., and De Witt, J., concur.