JAY, RESPONDENT, *v.* SCHOOL DISTRICT No. 1 OF CASCADE COUNTY, APPELLANT.

[No. 1,519.]

[Submitted April 4, 1900.   Decided May 29, 1900.]

*Statutes— Construction— School Districts—Teacher's Employment— Certificate—Term—Annual Reports— Salary—Failure to Pay—Judgment—Indebtedness—Power of Board— Mandamus.*

1. In construing a statute the court must elicit the purpose and intent of the statute from the terms and expressions employed, if this is possible, calling to its aid the ordinary rules of grammar.
2. Under Political Code, Sec. 1756, as amended by Sess. Laws 1897, p. 129, providing that the school trustees or school board of any district who shall employ any teacher for a period of more than three months, or who shall not hold a legal certificate in full force, shall be deemed guilty of a misdemeanor, the board has no authority to contract with a teacher who has not a certificate, or to employ a teacher holding a certificate for more than three months.   Hence a contract for the employment of a teacher holding a certificate for a school year of nine months is of no effect.
3. It is not for the courts to say whether the provision of a statute is wise or not; their duty is to require the inforcement thereof as they find it.
4. An admitted claim is as available as a foundation for a *mandamus* proceeding as is a judgment.
5. The fact that Political Code, Sec. 1756, as amended by Sess. Laws 1897, p. 129, prohibits the employment of teachers holding certificates for a period exceeding three months, does not obviate the necessity of teachers making annual reports to the county superintendent as is required by Political Code, Sec. 1841, or, if the employment be for only three months, at the end of such term.
6. Political Code, Sec. 1803, providing that the board of trustees of any school district shall be liable, in the name of the district, for any judgment against the district for any salary due any teacher on contract, and that they shall pay such judgment out of any moneys to the credit of such district, does not authorize the entry of a judgment against the school district for unpaid salary of a school teacher, where the district admits the claim, and the only reason that it does not pay it is that it has no funds applicable to the purpose, since, until it has funds on hand with which to pay, failure or refusal to pay is in violation of no duty.

7. A court will not enforce an invalid contract of employment of a school teacher by a school board merely because its failure to do so will result in the closing down of the public schools of a school district.

8. School district officers, not having power to levy taxes, have no power to incur indebtedness for the purpose of keeping the schools open beyond the time for which funds are provided.

*Appeal from District Court, Cascade county; J. B. Leslie, Judge.*

ACTION by G. H. Jay, as assignee of a teacher's claim for services, against School District No. 1 of Cascade county. From a judgment overruling a demurrer to the complaint, defendant appeals. · Reversed.

### STATEMENT OF THE CASE.

ACTION by plaintiff, G. H. Jay, as assignee of òne Helen Edgerton, to recover the sum of $120 for the services of said Helen Edgerton as teacher in the public schools of School District No. 1, Cascade county, Mont. The complaint, after alleging the corporate capacity of the defendant, proceeds:

(2.) "That on the 1st day of June, 1899, the board of trustees of the defendant district, by a written order made and entered at a regular meeting of said board had and held in the city of Great Falls, in said district, county, and state, entered into an agreement and contract with one Helen Edgerton, who possessed and still possesses a good and legal certificate as teacher, by which the said board employed and hired the said Helen Edgerton as a teacher in the public schools of said district for the term of nine and one-half months, to begin at the beginning of the ensuing school year, to wit, on the first Monday, September, 1899, and at a salary of one hundred and twenty dollars per month."

(3.) "That the said Helen Edgerton entered into the said contract with the said board of trustees, and accepted, in writing, said employment as teacher for the time so agreed upon, and that she entered upon the discharge of her duties as such teacher on the first Monday of September, 1899, and has continuously performed her duties in all respects as such teacher since that date; that said board has had full knowledge

of the performance of said services by said Helen Edgerton, and has accepted the same and consented thereto, though no express contract or agreement has ever been entered into between said board and said Helen Edgerton, save and except on the 1st day of June, 1899, as aforesaid; that said board has further certified and acknowledged that the sum herein sued for, to wit, one hundred and twenty dollars, is due and owing said Helen Edgerton for such services as teacher for the month ending December 22, 1899.''

(4.) ''That at the time of the employment of said Helen Edgerton by said board as aforesaid, on the 1st day of June, 1899, the money on hand and available to the credit of said defendant district amounted to the sum of fourteen thousand four hundred and forty-six and $\frac{80}{100}$ dollars; that out of said sum were paid the salaries of teachers and other expenses of the school for the balance of the school year after said contract was made, leaving on hand the sum of seven thousand eight hundred and ninety five and $\frac{99}{100}$ dollars on the first Monday of September, 1899, the date of the beginning of the current school year, and that this said last-named sum was fully used and exhausted in paying the salaries and other school expenses for said month of September.''

(5.) ''That since said date there has been no other money to the credit of said district wherewith to pay the salaries of any of the teachers employed in the schools of said districts, but that the salaries of all the teachers employed in the schools of said district for the months of October and November have been paid by a local bank, to which said teachers have assigned their claims against said district; that there is no money to the credit of, or available for, said district at the present time; that the general levy for school purposes made by the board of commissioners for the year 1899 under and by virtue of section 1940 of the Session Laws of 1897 was three and one-half mills on the dollar, and had the commissioners made a levy of five mills for such purpose, the additional sum of $8,758.89 could and would have been collected as taxes for the use of said school district No. 1, and such

sum would thereby have been sufficient to pay all expenses of running the schools of said district up to the —— day of February, 1900.''

(6.) ''That said district has not paid said Helen Edgerton her salary for the month ending December 22, 1899, or any part thereof, but that her said month's salary, to-wit, one hundred and twenty dollars, is wholly unpaid, and has been due and owing to her from said district since the 22d day of December, 1899.''

(7.) ''That in the employment of the corps of teachers for the present school year, including the said Helen Edgerton, for the term of nine and one-half months, as hereinbefore stated, and at the time hereinbefore stated, to-wit, on or about June 1st of the year, the board of trustees of the defendant district have acted as has been usual and customary with the board of trustees of said district, and as the educational and school interests of said district require.''

(8.) ''That the total number of teachers employed for the current school year in said district is 43, their salaries aggregating $3,700 per month, and that the average number of children residing in said district and attending the public schools thereof for the current school year is 1,500; that a well-equipped high school is embraced in the public school system of said district, and that the educational and school interests of said district require that the said schools should be kept open and maintained for at least nine and one-half months of each and every school year.''

(9.) ''That the electors of said school district did on the 8th day of September, 1899, vote a special tax by which the sum of $27,125.40 would have been collected in order to continue and maintain said schools for said periods of nine and one-half months, but that, on account of the decision of the Supreme Court declaring inoperative the law under which said tax was voted, no part of said taxes has or can be collected.''

(10.) ''That unless the contract heretofore made by the board of trustees of said district with the teachers in said public schools, including the contract with said Helen Edger-

ton, can be enforced by a good and valid judgment against said district, to be paid by moneys that may hereafter come into the treasury of said district, that it will be necessary that the schools of said district should forthwith be closed, and the educational and school interests of said district will accordingly be seriously crippled and impaired.''

(11.) ''That the total indebtedness of every kind against said district does not exceed the sum of $182,500, nor has it exceeded that sum at any time mentioned in this complaint; that the total assessed valuation of the property of said district is $8,345,276.''

After alleging the assignment of the claim to plaintiff, the complaint concludes with a demand for judgment for the sum of $120 and costs of suit.

To this complaint the defendant interposed a general demurrer, and on the 9th day of January, 1900, the court, after consideration of the questions presented by the demurrer, overruled the same. Thereupon, the defendant having refused to plead further, judgment was rendered against it for the amount claimed. The defendant appeals from this judgment.

*Mr. C. B. Nolan, Attorney General,* and *Mr. Thomas E. Brady,* for Appellant.

*Mr. A. C. Gormley,* for Respondent.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

1. Counsel for appellant argues that the judgment is void because founded upon a contract made in contravention of an express prohibition of section 1756 of the Political Code, as amended by the Session Laws of 1897, p. 129. This section, as it originally stood, provided that no school district should be entitled to receive any apportionment of school money unless all the teachers employed in the schools therein during the three month next preceding the apportionment held certificates of fitness for teaching. As amended it provides: ''The

school trustees or school board of any district who shall employ any teacher in the public schools of their district for a period of more than three months or who shall not hold a legal certificate of fitness for the occupation of teaching, in full force and effect, shall be deemed guilty of a misdemeanor.'' The obvious purpose of this provision, counsel says, is not only to prohibit altogether the employment of teachers who have not certificates of fitness, but also, in all cases, to limit the term of employment to three months. Counsel for respondent assumes the position that the intent and purpose of the section is to prohibit only the employment for a period longer than three months of teachers not holding the required certificate; leaving the trustees to make the term of employment of qualified teachers to suit their own notions of their duty, and the necessities of their particular district. The argument is that a reading of the section according to its obvious grammatical sense requires the conjunction ''or'' to be considered as properly connecting the two relative pronouns, ''who'' making them both refer to the same antecedent, viz. trustees or board; thus showing the manifest absurdity that a trustee not holding a certificate of qualification is guilty of a misdemeanor. To avoid this absurdity, he says, we must omit entirely the connective ''or,'' as surplusage. The latter relative, ''who,'' will then grammatically refer to the word ''teacher'' and thus it will appear that it is the purpose of the section to punish trustees who assent to the employment of teachers for more than three months when they have no certificate. The suggestion is also made that under the old section the moneys apportioned to a district were withheld as a punishment to the district, when its trustees failed to observe the law in employing teachers, while the sole purpose of the amended section is to shift the punishment to the trustees personally. Any other view of the statute, it is argued, will seriously impair the efficiency of the school system of the state.

The section in question is not very skilfully drawn. Nevertheless, we must elicit the purpose and intent of it from the

terms and expressions employed, if this is possible; calling to our aid the ordinary rules of grammar. This is the elementary rule applicable to all statutes. Other rules may be invoked only when this fails. (Endlich on Interpretation of Statutes, Sec. 4.) "The moment we depart from the plain words of the statute, according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn." (Dame, Seymour & Co.'s Appeal, 62 Pa. St. 417. See, also, Endlich on Interpretation of Statutes, sec. 7; *Hamilton* v. *Rathbone*, 175 U. S. 419, 20 Sup. Ct. 155, Adv. S. U. S. 155, 44 L. Ed. —; *Smith* v. *Williams*, 2 Mont. 195; *Carruthers* v. *Commissioners of Madison County*, 6 Mont. 482, 13 Pac. 140.) Applying this rule of interpretation, whatever may have been the actual intention of the legislature, it is clear that the latter relative refers for its antecedent to the word "teacher," and that the author of the section, in stating the other alternative, omitted a repetition of it, as unnecessary. This clause would then properly read, "or any teacher who shall," etc. This reading does no violence to the rules of grammar, and does not require the omission of any word. It entirely avoids the absurdity suggested by respondent's counsel, and makes the section denounce as a misdemeanor the doing of either of the acts mentioned in the clauses connected by the conjunction. There is nothing in the section as it stood before the amendment to suggest that the intention of the legislature was otherwise. Under it the employment of a teacher without a certificate could not cover a period of more than three months. Under the amended section this employment cannot be made at all, nor can any contract of employment endure longer than three months. What purpose was had in view by this change, it is not our province to inquire. It is not for us to say whether it is wise. Nor do we think it incumbent upon us to seek for a construction of this section which would bring it in harmony with other provisions touching the duties enjoined upon teachers in regard

to annual reports to the county superintendents. Every teacher is required to make a report to this officer on or before September 10th next after the close of the school year. (Political Code, Sec. 1841.) This provision, it is argued, necessarily implies at least an annual employment. It may be conceded that it does.   Still, if the plain intent of the section in question cannot be harmonized with other sections regulating the duties of teachers, its provisions must control upon the subject with which it deals.   The amended act containing this section was passed after the other Code provisions, as a revision of them in many particulars.   It expressly repeals all other provisions of the Code which are in conflict with its own provisions. The intention being clear, the older provisions must yield to the explicit requirements of the new provision.   The section cannot be construed, under any recognized standard, to mean anything but what it says.   The word "or" may have crept into it by inadvertance, yet it does not appear so.   The engrossed bill, (which we have examined) shows no evidence of such inadvertance.   We are not justified, therefore, in making the assumption that such is the case.   A careful examination of all the other sections of the statute, as it originally stood and as amended, fails to show anything to justify such a conclusion.

The ultimate purpose to be accomplished by the provision is not clear.   It may be to require a quarterly renewal of contracts with teachers; thus leaving the trustees in position to terminate the employment of those whose services are not entirely satisfactory, but for whose removal there exists no statutory cause justifying a disregard of an existing contract. It may be, also, to enable the trustees to close the school upon the happening of epidemics, without having to continue the payment of salaries beyond a limited time, which they would otherwise be compelled to do under annual contracts; or to shorten the term upon an unexpected failure of funds from unforseen causes, and thus avoid involving the district in debt. But, whatever may have been the purpose in the mind of the legislature, such legislation is entirely within its power; and,

whether the provision be wise or not, our duty is to require the enforcement of it as we find it.    We do not think the contract such a one as the board of trustees could make, and therefore conclude that it cannot be sustained.

It is not necessary to conclude, however, that the section in question dispenses with the requirement of annual reports by teachers under section 1841, *supra.*    Teachers in the employment of the board must still make these annual reports as directed.    At any rate, they are required under the latter part of the section to report at the end of the term for which they are employed.

2.    It appears from the order of the district judge directing judgment for the plaintiff that he was of the opinion that, though it be conceded that the contract set forth in the complaint is void under the statute, there are still sufficient substantial allegations in the pleading to sustain a judgment for services for the month of December, of the reasonable value of $120, rendered with the consent of, and accepted by, the defendant.    This view was entertained upon the authority of *State ex rel Northwestern Nat'l Bank* v. *Dickerman*, 16 Mont. 278, 40 Pac. 698. In this case this court quoted with approval from *Brown* v. *City of Atchison*, 39 Kan. 37, 17 Pac. 465, as follows:    ''From the authorities, we think the following principle may be deduced: Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void, in whole or in part, because of a want of power on the part of the corpora to make it or enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed, in whole or in part, by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party, by either rescinding the contract and placing the other party in *statu quo*,

or by accounting to the other party for all benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit." Conceding this to be the general rule, appellant asserts that, as the complaint in this case discloses the fact that there is no dispute between itself and the plaintiff as to the fact and amount of the indebtedness involved in this suit, and also that the failure to pay is due entirely to a want of funds to meet the claim, no judgment may be rendered against it in this case. This argument proceeds upon the assumption that, as the trustees have no power to levy taxes for current school purposes (*Hilburn v. St. Paul M. & M. Railway Co.*, 23 Mont. 229, 58 Pac. 551), and as they are prohibited by statute from drawing a warrant to pay any outstanding claim unless there is money in the county treasury to the credit of the district, (Political Code, Sec. 1737), the trustees are guilty of no breach of duty until they refuse to properly apply funds subject to their order to the payment of the particular claim. Let us see if this assumption is justified. The funds provided by law for the maintenance of schools are derived in the first place from interest on the state school fund, rents of school lands, escheats, and other sources mentioned in section 1940 of the Political Code. Beside the revenues from these sources, the commissioners of each county are required to levy every year, for current scoool expenses, a tax upon all the property in the county, of not less than three nor more than five mills upon each dollar of assessed valuation, as fixed by the county assessment. (Laws of 1897, p. 134.) The amounts of all fines remaining after the payment of costs in the cases in which they are imposed are also paid into the county treasury, and are set apart for school purposes. (Laws of 1897, p. 134; Political Code, Secs. 1891, 1892.) The moneys derived from the interest on the state school fund, and other sources, controlled by the state, are apportioned to the various counties by the state superintendent not later than February 10th each year, and the amount falling to each county is then made available

for school purposes. (Political Code, Sec. 1714). The county superintendent from time to time apportions the whole fund thus accumulated in the county treasury to the various districts, and the apportionment falling to each district is the only fund upon which the local trustees can draw for the payment of salaries and other current demands. The school year opens on September 1 (Political Code, Sec. 1864), but none of the funds mentioned, except those derived from fines, can be made available for the year earlier than the first Monday in December, on which date the time for the payment of county taxes expires. As the amount derived from fines is generally insignificant, and as the funds belonging to the various districts are usually exhausted at the end of the current year, or nearly so, it is clear that the local boards must frequently withhold payment until the apportionment falling to their districts becomes available; for, as we have already seen, the trustees can draw no warrant until there is money to the credit of the district. (Section 1737, *supra.*) If the trustees were permitted to anticipate their apportionment and issue warrants against it, persons holding such warrants could dispose of them, and thus obtain their money. Under plaintiff's view of the law, though the trustees cannot do this, yet he may pursue the district by suit, and recover a judgment. To support this claim he cites and relies upon section 1803 of the Political Code, which provides that the board of trustees of any district shall be liable, in the name of the district, for any judgment against the district for any salary due any teacher on contract, and for all debts legally contracted, and they shall pay such judgment out of any moneys to the credit of such district. Manifestly, if a judgment be recovered against the district when there is no fund available out of which to pay it, the plaintiff is in no better condition than before it was rendered, except that he has an established claim. He cannot be paid until the apportionment is made. Even then he can be paid only by warrant. It would seem clear, therefore, that, if there is no dispute as to the validity and amount of the claim, the only difficulty being that there are

no funds, no judgment should be permitted, for the reason that no breach of duty is shown on the part of the district.

Under the allegations of the complaint, when this suit was brought there were no funds in the treasury of Cascade county against which the trustees of defendant could draw. The trustees say to the plaintiff: "Your claim is just, but our hands are tied until the apportionment is made to our district. As soon as this is done, we will draw the warrant, but we may not violate the law." To render a judgment against the district under these circumstances would be to adjudicate the fact that it has violated its contract, in that it has, through its officers, refused to violate the law; and, because of this refusal on their part to violate the law, the district must be mulcted in costs, and pay interest until the funds are provided by the authorities of the state and county to meet the demand.

We think it the policy of the whole system of our school law that all persons dealing with school officers are presumed to do so, not only with full knowledge of the power of these officers to bind their corporations under the particular contract, but also with reference to the mode of payment, and the means at their disposal for this purpose. (*Union School Township* v. *First Nat'l Bank of Crawfordsville*, 102 Ind. 464, 2 N. E. 194.) If there is a disputed claim against the district, it can be determined only by means of an adjudication under section 1803, *supra.* If, however, there is no dispute as to the claim, the trustees standing ready to perform their duty as soon as they may, the district cannot be subjected to the needless vexation and embarrassment of suits because other officers of the government have not done their duty in providing funds to make payment. The purpose of a suit is to redress a wrong or to protect a right. What wrong has been done in this case that may be redressed by this suit? The liability is not disputed. The defendant says: "I will pay as soon as the law permits. I cannot pay until there is a fund out of which to pay." The judgment, if granted, cannot be enforced until the fund is available. No execution may issue. (Constitution, Article XII, Sec. 8.) True, if the trus-

tees, admitting the indebtedness, willfully refuse to issue a warrant, *mandamus* would lie.    (*State ex rel. Great Falls Water Works* v. *City of Great Falls*, 19 Mont. 518, 49 Pac. 15; *Greeley* v. *Cascade Co.*, 22 Mont. 580, 57 Pac. 274.) But, there being no funds, they cannot be compelled to issue the warrant.    The judgment would therefore amount to nothing more than an admitted claim.    If the trustees had power to levy taxes to pay the claim, or to raise money in any other way for this purpose, it would be their duty to do this, and a failure to act would be a breach of duty.    But this power is not conferred by the statute.    If it were the ultimate purpose to compel the commissioners of the county, by *mandamus*, to levy a tax to pay the debt of the district, the admitted claim would be as available as a foundation for this proceeding as a judgment.

There is nothing in the case of *State ex rel. Shapley* v. *Commissioners of Yellowstone Co.*, 12 Mont. 503, 31 Pac. 78, to controvert this view.    It is not there held that a judgment is a necessary basis of a *mandamus* proceeding to compel the levy of taxes to pay such a claim as the one under consideration.

Whether Helen Edgerton rendered the service under an express or implied contract, they were, in contemplation of law, to be paid for when funds became available.    This suit was instituted on December 29, 1899.    For aught that appears in this case, there would have been funds enough to meet the claim as soon as the taxes for that year were apportioned by the county superintendent.    It is nothing to the point that the school term in Cascade county will be shortened if this judgment be not sustained.    It is the fault of the legislature or the taxing authorities that ample means are not provided to continue the schools.

The propriety of a money judgment against a county upon a warrant was fully discussed in *Greeley* v. *Cascade Co.*, *supra.* It was there held that a suit for this purpose does not lie. We think the discussion found in the second paragraph of the opinion in that case directly applicable to the question raised

here, and that the judgment herein cannot be sustained upon the ground stated by the district court.

3.   And this brings us to the consideration of the last point made by the appellant, viz. :   That the trustees of a school district have no authority to contract debts for the purpose of continuing a school, without reference to the amount of funds provided by law from year to year.   This contention, we think, is correct.   The school-district officers cannot levy taxes for current school purposes.   This is done by other officers of government, under the law.   If the school trustees may incur debts, without reference to the amounts thus raised, so long as the constitutional limit is not overstepped (Constitution, Article XIII, Sec. 6), then, though they are denied the power to levy taxes for any purpose, they are by implication clothed with the power of imposing the burdens of debt upon the district, for the payment of which the authorized taxing officers must provide, which is more extensive than a limited taxing power.   It is clearly the duty of the trustees to confine their expenditures to the limits of the funds provided by law.   They may reasonably anticipate the funds before they become available, but they may not embark generally upon a course of expenditure not measurably within this limit.   In each case where a debt is contracted by them which overreaches this limit, recourse must be had to the attendant facts and circumstances, and the liability of the district, if any, must be determined accordingly.   School districts are public corporations (Political Code, Sec. 1759), but their powers are very limited.   They can exercise none except such as are conferred by the law creating them, either expressly or by fair implication.   (Dillon's Municipal Corporations, Secs. 22, 24, 25, and note; 21 Am. & Eng. Enc. Law, 779, and note.)   Not having the power, under the statute, either with or without a vote of the electors, to levy taxes for current purposes, they may not extend the term of school beyond the time for which there are funds provided.   (*Morley* v. *Power*, 2 Am. & Eng. Corp. Cases, 354 S. C. 10 Tenn. 219; *Weatherly* v. *Mayor, etc.*, of *City of Chattanooga*, (Tenn. Ch. App.) 48 S. W. 136.)

Respondent cites many cases in support of his contention that the judgment herein should be sustained, but they are based upon different statutory provisions, and cannot be deemed controlling under the provisions of our statute.

Nothing we say here, however, is to be construed as an adjudication that the claim involved in this case is not a just liability of the defendant. It does not appear that there would not be ample funds in the county treasury to meet this claim under the apportionments made by the state and county superintendents since this suit was instituted, and to be made by the county superintendent hereafter during the present school year. Nor does it appear from the facts stated in the complaint that the trustees of the defendant, in contracting the debt, have done more than attempt to anticipate the funds which would presently be apportioned to the district by the county superintendent. The question as to whether the defendant may be ultimately liable in any event for the plaintiff's claim does not, therefore, properly arise.

For the reasons stated, the judgment must be reversed, and the cause remanded, with directions to the district court to sustain the demurrer.

*Reversed and remanded.*

MR. JUSTICE PIGOTT. I concur in the decision upon the first two grounds discussed. I think the third ground is an *obiter.*

MR. JUSTICE HUNT, being absent, does not participate in the foregoing opinion.