STATE EX REL. CENTRAL AUXILIARY CORPORATION, RESPONDENT, v. RORABECK, COUNTY TREASURER, ET AL., APPELLANTS; PHILLIPS INVESTMENT CO. ET AL., INTERVENERS AND APPELLANTS.

(No. 8,113.)

(Submitted November 15, 1940. Decided December 18, 1940.)

[108 Pac. (2d) 601.]

*Mr. M. L. Parcells* and *Messrs. Blenkner & MacFarlane,* for Appellants, submitted a brief; *Mr. E. A. Blenkner* argued the cause orally.

*Mr. A. G. McNaught,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from the judgment of the district court directing the county treasurer of Golden Valley county to make certain payments on the bonds and coupons of the Franklin Irrigation District.

The case was tried on an agreed statement of facts showing: That on the first day of March, 1923, the district executed and delivered seventy-nine bonds, in the principal amount of $500 each, with the exception of one which was for $685.13; that each and all bonds were payable to bearer and identical in form and substance and all bearing interest at six per cent. and becoming due on the first day of March, 1933; that the bonds bore interest coupons maturing semiannually; that some of the bonds had been redeemed before their maturity; that the unredeemed bonds are held by relator, the Central Auxiliary Company, and by the interveners, the Phillips Investment Company, and the Securities Service, Inc.; that all of the coupons have been paid except on bonds numbered 10 to 15, inclusive, the interest on those amounting to $1,800, which are held by the relator; that the coupons representing this interest were more than eight years past due at the time of demand for payment which was made in 1938; that the district has never been in possession of a dependable, or any, water supply system and has never furnished water in any substantial amount to bona fide users; that of the original 35,275.67 acres in the district approximately 15,541 acres have passed to the county for delinquent taxes; and that the only funds on hand for the purpose of paying the interest and principal of the bonds are $7,491.71 in the bond

and interest fund, and $690.23 in the general fund, of the district, making a total of $8,181.94, which is inadequate to meet all the obligations.

The district court in deciding the issues directed the coupons to be paid first from the general fund until it was exhausted and then from the bond interest and sinking fund, the balance to be prorated among all of the bondholders. The interveners contend that the decision is erroneous in that the coupons were barred by the statute of limitations and that the payments on the principal should not be made on a *pro rata* basis but by giving preference to the bonds of lower numerical order.

The statute of limitations that was pleaded was the 8-year statute, section 9029, Revised Codes. After the agreed statement of facts was filed defendants as well as the interveners asked leave of court to amend their pleadings so as to rely upon the 2-year statute, section 9033, as well as the 5-year statute, section 9041. The court denied the right of interveners to amend but made no ruling on defendants' motion. The court found that the coupons were not barred by section 9029 and declined to consider whether they were barred by sections 9033 or 9041.

In determining whether the court reached the correct result we shall consider the question whether the coupons were barred by the statute pleaded, as well as whether barred by those attempted to be pleaded. If they were not barred by any of these statutes then it was immaterial whether the court erred in denying the motion to amend the pleadings.

It is well settled that, generally, the same statute of limitations applicable to the principal of bonds is applicable also to the coupons, except that the statute begins to run from the date of the maturity of the coupons respectively, and not from the date of the maturity of the bonds and this irrespective of whether the coupons have been detached from the bonds or remain attached thereto. (*Smythe* v. *Inhabitants of New Providence,* (D. C.) 253 Fed. 824; *Clark* v. *Iowa City,* 20 Wall. 583, 22 L. Ed. 427; *Amy* v. *City of Dubuque,* 98 U. S. 470, 25 L. Ed. 228; *Koshkonong* v. *Burton,* 104 U. S. 668, 26 L. Ed. 886;

324

 

*California Safe Dep. & T. Co.* v. *Sierra Val. Ry. Co.,* 158 Cal. 690, 112 Pac. 274, Ann. Cas. 1912A, 729; *Curtis* v. *Rialto Irr. Dist.,* 44 Cal. App. 738, 187 Pac. 117; *People* v. *Honey Lake Irr. Dist.,* 77 Cal. App. 367, 246 Pac. 819; Wood on Limitations, 4th ed., vol. 1, sec. 127; 37 C. J. 848.) But when the bonds and coupons are payable out of a particular fund only, other questions must be considered in determining when the statute starts to run.

Interveners contend that when the interest coupons matured, the holder had a cause of action in mandamus to compel the levy of an assessment for the purpose of creating a fund sufficient to pay them and hence that the cause of action accrued at that time. This contention cannot stand in the face of the agreed statement of facts showing "that from time to time special assessments were duly made and levied upon the property within" the district for the purpose of paying the bonds and interest.

Interveners contend in any event that relator's cause of action accrued when there was money in the hands of the county treasurer applicable to the payment of the interest coupons sufficient to pay them. Relator on the other hand contends that no cause of action accrued even then until demand for payment was made and refused or the trust otherwise repudiated. Relator's contention in this respect must be sustained. The statute of limitations does not begin to run when the bonds are payable out of a particular fund unless it appears that the fund has been provided for. (37 C. J. 849.) While relator had a cause of action in mandamus to compel the payment of the interest coupons as soon as money was in the hands of the proper officer and held for their payment (38 C. J. 761; *State ex rel. Shapley* v. *Board of Commrs. of Yellowstone County,* 12 Mont. 503, 31 Pac. 78; *Greeley* v. *Cascade County,* 22 Mont. 580, 57 Pac. 274; *State ex rel. McHose* v. *District Court,* 95 Mont. 230, 26 Pac. (2d) 345; *State ex rel. DeKalb* v. *Ferrell,* 105 Mont. 218, 70 Pac. (2d) 290), yet there are circumstances here which save the coupons from the bar of any statute of limitations.

The principal and interest on the bonds were payable out of a particular fund exclusively, of which the county treasurer was custodian (secs. 7213, 7232, Rev. Codes 1921). The officers of the irrigation district who must provide for the levy and collection of a tax sufficient to meet the interest and principal, and the county treasurer who is made the custodian of the funds of the district, stand in the relation of trustees for the bondholders of the district. (*Thompson* v. *Emmett Irr. Dist.*, (9 Cir.) 227 Fed. 560; *Norfolk & W. Ry. Co.* v. *Board of Education*, (D. C.) 14 Fed. Supp. 475; *Jewell* v. *City of Superior*, (7 Cir.) 135 Fed. 19; *Rothschild* v. *Village of Calumet Park*, 350 Ill. 330, 183 N. E. 337; *Taylor* v. *Benham*, 5 How. 233, 12 L. Ed. 130; *Blackford* v. *City of Libby*, 103 Mont. 272, 62 Pac. (2d) 216, 107 A. L. R. 1348.)

It is generally held as between the trustee and the beneficiary of a trust, the statute of limitations does not run until the trust has been repudiated and notice of repudiation received by the beneficiary. (*Blackford* v. *City of Libby*, supra; *City of New Orleans* v. *Warner*, 175 U. S. 120, 20 Sup. Ct. 44, 44 L. Ed. 96.) The rule is succinctly stated in 4 Bogert on Trusts and Trustees, section 951, as follows: ''The true rule with respect to the statute of limitations and express trusts is more clearly stated as follows: During performance of the express trust there is no cause of action for breach and so the statute of limitations has no bearing on the rights of the *cestui*; but, if the trustee violates the trust and the *cestui* knows of such conduct, or could have learned of it by the use of reasonable diligence, the court will apply the statute of limitations which governs equitable causes of action or an analogous statute concerning legal causes of action. To cause the statute to begin running during the life of the trust there must be some act of repudiation of the trust by the trustee, as where he declines to account to the *cestui*, takes trust income for his own purposes, or sets himself up as the owner of the trust capital.''

Here there was no repudiation of the trust shown unless it was in November, 1938, when relator demanded payment of

the interest coupons and payment was refused. Whether this constituted a repudiation of the trust we need not determine. This action was brought in January, 1939, and hence was not barred by any of the statutes of limitations attempted to be pleaded. Since none of the statutes pleaded or sought to be pleaded could have been successfully pleaded as a bar, it was not error to refuse the motion to amend by pleading them. The court properly held that the interest coupons were not barred by limitations.

The only remaining questions are whether the court was right in giving the interest coupons preference from the funds on hand and ordering the principal of the bonds paid ratably. It is urged by interveners that the court erred in concluding that the residue in the fund should be prorated among all of the matured bonds. They argue that since the bonds held by them are of lower numerical order they are entitled to preference.

The statute does not support interveners' contention. Section 7212, Revised Codes of 1921, which was the applicable statute when the bonds were issued, provided that, "Instead of straight maturity bonds, bonds may be issued to mature serially at such times and in such amounts as the board of commissioners shall determine."

The bonds issued here were *not* serial bonds but were straight maturity bonds. The bonds are all of the same date and of the same issue, and mature at the same time. The statute then in effect did not require the bonds to be numbered consecutively, as is true of the amended statute. (Sec. 7212, Rev. Codes 1935.) They were in fact numbered but this was for convenience in handling and for the purpose of identification, and does not mean that they shall be redeemed in that order. Interveners point out that section 13 of Chapter 157, Laws of 1923, which was passed after these bonds were issued, placed such bonds on an equality and that Chapter 155, Laws of 1929, repealed the equality statute, and argue that this evinces a legislative intent that bonds of the same issue, issued prior to the passage of Chapter 157 of the Laws of 1923, were not of equal rank one with the other. It is our view that Chapter 157 on the point

we are considering simply declared the law as it already existed without that chapter, and, hence, that it or its subsequent repeal did not show a legislative intent to affect the status of the bonds in question here.

Since there is no statutory authority for priority of payment there can be no application of the rule followed in *State ex rel. Boyd* v. *Mills*, 133 Wash. 681, 234 Pac. 1042, 238 Pac. 581, and the cases cited therein.

There are many cases treating of the question of prorating payment among bondholders when the fund out of which the bonds are payable is insufficient to make full payment. (See exhaustive note in 90 A. L. R. 717.) The cases are not in entire harmony. Well-reasoned cases support the conclusion that when the taxing power has been exhausted with respect to the particular bond issue and it is reasonably certain that there will not be sufficient funds to pay all, even though additional moneys will likely accrue to the fund, the fund must be applied *pro rata*. (*Town of Columbus* v. *Barringer*, (4 Cir.) 85 Fed. (2d) 908; *Norfolk & W. Ry. Co.* v. *Board of Education*, (D. C.) 14 Fed. Supp. 475; *Norris* v. *Montezuma Valley Irr. Dist.*, (8 Cir.) 248 Fed. 369; *Thomas* v. *Patterson*, 61 Colo. 547, 159 Pac. 34; *Rohwer* v. *Gibson*, 126 Cal. App. 707, 14 Pac. (2d) 1051; *Meyers* v. *Idaho Falls*, 52 Idaho, 81, 11 Pac. (2d) 626; *Rothschild* v. *Calumet Park*, 350 Ill. 330, 183 N. E. 337. See, also, other cases in note in 90 A. L. R. 717, and sec. 2504, 6 McQuillin Mun. Corp., 2d, 3d, and cases there cited.)

In the case at bar the fund cannot be replenished by further assessments (*State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1), and the only method of obtaining additional funds is by the sale of the lands to which tax titles have been taken. This is at best an uncertain and unreliable source of income. This case fits the language used in *Town of Columbus* v. *Barringer*, supra, wherein it is said: "But when it is clear that all creditors in like situation will never be paid in full, or when grave doubts arise as to whether all will be so paid, it has been frequently held that the fund should be distributed *pro rata;* and this is particularly true when the sole security

consists of a special assessment, as in the case of improvement bonds, and the full taxing power of the municipality is not available for the liquidation of the bonds." Nor does it affect the situation that other bondholders may have been paid in full. (*Meyers* v. *Idaho Falls,* supra.)

As to the interest coupons, there are circumstances which justify the court's action in requiring them to be paid first. The record discloses that the interest coupons on all the bonds have been paid save $1,800, which is due to relator. In fact at the very time that relator demanded payment of the $1,800 interest, and was refused payment, it was paid $1,500 due on other interest coupons and there was then sufficient money on hand, applicable to the payment of interest on the coupons, to pay them in full. Since all the interest coupons have been paid to other bondholders, it would be an injustice to deny relator the right to have its interest coupons paid. In other words, to place all the holders of outstanding bonds on a parity, relator should be paid its $1,800 due on interest coupons.

The writ of mandamus is an extraordinary writ that should never be used by the court to effectuate an injustice, but only to prevent a failure of justice. (*Rohwer* v. *Gibson,* supra.)

The district court was right in allowing relator preference on its interest coupons and in ordering the balance of the money on hand to be paid to the bondholders *pro rata.*

The judgment is affirmed. Pursuant to stipulation appearing in the record each party will pay its own costs and disbursements both in the district court and here.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.

Rehearing denied January 2, 1941.