### UNITED STATES v. MARKEY et al.
#### No. 348.

United States District Court
D. Montana, Billings Division.

Sept. 4, 1947.

C. W. Buntin, Special Assistant to the United States Attorney, Lewistown, Montana, for plaintiff.

Daniel L. O'Hern, Miles City, Montana, for Peter E. Tjensvold et al.

Alexander Seifert, Springfield, Minn., for himself and Conrad Zunkle and Richard S. Schmid.

Kenneth H. Barnard, East Newark, N. J., in per pro.

P. F. Leonard, Miles City, Mont., and Desmond J. O'Neil, Glendive, Mont., for Mary Hagen, E. B. Clark and Minnie R. Evans.

D. C. Warren and E. W. Popham, Glendive, Mont., for Dawson County, Mont.

Cecil N. Brown, Terry, Mont., for Prairie County, Mont.

PRAY, Chief Judge.

The principal question involved in the above condemnation proceeding at this time relates to the distribution of compensation now on deposit in the registry of the court, which, upon proper showing, should be made to the persons entitled thereto.

The lands embraced in this action were acquired by the Government through an agreement which included total acreage of the purchase and consideration therefor, and also through condemnation proceedings, wherein declaration of taking was filed, sec. 258a, Title 40 U.S.C.A., and commissioners were appointed by the court to appraise the lands, which was done in accordance with the terms of the aforesaid agreement of purchase; and thereafter they made their return and awarded as just compensation for the same total acreage the same amount of money as had theretofore been agreed upon between the Government and the defendants herein, Dawson and Prairie Counties, which sum was thereafter deposited in the registry of the court. Final judgment was entered on the awards of the commissioners, and no appeal was ever taken therefrom.

The court thereafter ordered distribution from the registry to the defendant counties, Dawson and Prairie, and to each, upon representations made to the court, such sums as would equal the delinquent unpaid general taxes, on the lands embraced in the purchase and thereafter condemned.

Hearings have been held in respect to the alleged proper amounts due the counties, and the bondholders, and others listed as being entitled to payment of certain sums from the court registry; voluminous briefs have been filed, following oral argument, together with several documents marked as exhibits.

Counsel claim for the bondholders the balance remaining in the registry of the court amounting to about the sum of $19,034.89; also the sum of $3,315.06, which they allege was improperly paid to Dawson County and the sum of $327.86 as excess payment to Prairie County; also they claim the sum of $758 on deposit in the registry as due on tract 1-27, known as the Yale tract, also the sum of $425, as due them from the deposit in the registry to

the credit of tracts Nos. 1-47 and 1-53, known as Scottish-American Mortgage Company tract.

■ From a consideration of the law and the facts as they appear to the court the counties aforesaid were entitled to payment from the registry of such sums of money as represented the delinquent unpaid taxes on the lands condemned, in which the counties held title at the time such condemnation proceedings were begun. After such payment was made to the counties, a balance remained, and still remains, impounded in the registry of the court, subject to further order of distribution.

■ Of the separate tracts of land involved, the one known as the Henderson tract (No. 1-12) was not embraced in the irrigation district in quesiton and was not subject to the lien of the bondholders.

As to the Yale tract, No. 1-27, it does not appear that it was susceptible of irrigation, was ever assessed for that purpose, or that it was obtained from either of the counties, or that the irrigation district or bondholders have any lien upon the compensation of $758 deposited in the registry of the court to the credit of this piece of land.

The land designated as the Scottish American Mortgage Co. tract, Nos. 1-47, and 1-53, for which $425 was deposited in the registry, does not appear to have been legally embraced in the irrigation district in the absence of notice or consent, and that upon foreclosure in which the irrigation district was included as a party defendant, no claim of lien or otherwise was made by such defendant. The irrigation district and the bondholders do not appear to have any interest in the distribution of this fund.

■ The superiority of general taxes assessed against the lands in question over special assessments and lien of bondholders is indicated by the decision in State ex rel. Malott et al. v. Board of County Commissioners, 89 Mont. 37, 296 P. 1, wherein it was held that when the county acquires lands by tax deed on account of delinquent taxes and irrigation district assessments, it takes and holds such title as a trustee. Other authorities apply to the state of

facts presented here and hold that after the payments to the counties of general taxes, and to the other claimants listed, under the equity rule it would seem that the balance of the money remaining in the registry should be paid to the bondholders.

■ It appears that the irrigation district had ceased to function as such in the year 1927, and was therefore not functioning when tax title deeds were taken by the counties. It was also held that tax title deeds taken for lands in irrigation districts, taken prior to amendment of section 2215.9, Rev.Codes 1935, Laws of 1937, Chapter 63, Sec. 1, p. 106, extinquished all liens and encumbrances against the lands. State ex rel. Malott v. Cascade County et al., 94 Mont. 394, 406, 22 P.2d 811; Rosebud Land & Improvement Co. v. Carterville Irrigation District et al., 102 Mont. 465, 58 P.2d 765.

■ The registry fund above described appears to be the only fund to which the bondholders may have recourse in this proceeding to apply on the bonded indebtedness of the district. Distribution to the bondholders apparently is required to be made on a pro rata basis. State ex rel. Central Auxiliary Corporation v. Rorabeck, County Treasurer, et al., 111 Mont. 320, 108 P.2d 601. The legal rights to distribution became fixed and are determinable as of the date the money was deposited in the registry of the court.

■ The claim by counsel for the bondholders that assessments made against personal property which became a lien on real estate are inferior in rank to assessments made for the purposes of the irrigation district, seems to be clearly established to the contrary in the supplementary brief by the Government, wherein statutes and authorities are cited which, in the court's opinion, plainly declare the law on the facts presented here. The following concluding statement of counsel appears therein: "It will be noted that until Section 2215.9 was amended by enactment of the 1937 legislative session that assessments of an irrigation district were inferior to the general taxes. See Chapter 63, page 106, 1937 Session Laws. Record will dis-

close that no assessments were made by the irrigation district for the year of 1937 or subsequent thereto. Clearly, in the light of the law any taxes assessed against personal property for general purposes and which became a lien upon the lands of the owner are superior to assessments made to pay interest on bonds, or other purposes in connection with the irrigation district, and this is substantially true by reason of there being no statute requiring that irrigation district be notified before taxes on personalty of an owner would be permitted to become a lien against the lands superior to the lien of bondholders or assessments made for the irrigation district."

It appears that the irrigation district was legally organized and that the irrigable area subject to the lien of the bondholders was fixed and determined by the board of directors as provided by law, and that this was done prior to the making of assessments and the issuance of bonds. So far as can be ascertained from the record none of the land owners in the district ever paid any of these assessments or any part of the bonded indebtedness, and none of the lands designated by the board of directors as irrigable were ever irrigated. Section 7235, M.R.C.1921, as amended by Chapter 157, Sessions Laws of 1923, p. 473, Rev. Codes 1935, § 7235 et seq.

Dawson County, Montana, offered to sell 4,164.69 acres of land to the Government for the consideration of $23,526., and in this offer of sale there was no division of the lands to be sold into tracts. Here is the offer and agreement referred to: "It is hereby stipulated and agreed by and between the County of Dawson, State of Montana, acting by and through the Board of County Commissioners, and the United States, that for all purposes of this condemnation proceeding the price and value of tract No. 494, containing 4,164.69 acres, more particularly described in the petition filed herein, shall be the sum of $23,526.00 and that the award of the court, or any appraisers or commissioners appointed by the court in this proceeding, may be $23,526.00."

Counsel for the Government states that the lands were divided into tracts as shown by the complaint in order to determine who should be named as parties defendant and in what tracts or parcels of land they might claim an interest, and in this connection counsel further stated: "The sums allocated to the respective tracts constituted a division of the compensation deposited in the registry of the court based upon appraisals made by representatives or agents of the United States, and was provided for me as attorney for the Government, by Harry C. Anderson, Project Manager of the Buffalo Rapids Project. The same statement applies as to the lands offered for sale to the Government by Prairie County, Montana, and particularly as to the allocation thereof to the respective tracts. So far as the writer knows, Dawson County, Montana, was not consulted at any time or at all as to the allocation of the compensation to the respective tracts of land. Assurance, however, was given to Mr. D. C. Warren, Attorney for Dawson County, Montana, that commissioners appointed would be requested to award a sum equal to the offer made and like assurance was given to the County Attorney of Prairie County, Montana, and awards were so made by the commissioners."

Where the purchase price of property has been agreed upon by the owner and the Government, and the latter should thereafter commence condemnation proceedings, the price agreed upon is still binding upon both parties. Bank of Edenton v. U. S., 4 Cir., 152 F.2d 251, 254; Danforth v. U. S., 308 U.S. 271, 282, 60 S. Ct. 231, 84 L.Ed. 240; Oliver v. U. S., 8 Cir., 156 F.2d 281, 282.

Counsel explains that the lands were condemned so as to avoid any question relating to title, and that an effort was made to name as defendants all persons who might claim any interest in the lands or any part thereof.

The court has read the transcript of the hearings and the minutes of the irrigation district on the designation of irrigable areas and the levying of assessments thereon, that is, for the purposes of the irrigation district, and it would seem that the commissioners have fairly complied with the law in that respect.

The Counties of Dawson and Prairie had a first lien on the compensation deposited in the registry of the court to the extent of the general taxes delinquent and unpaid against the lands in question at the time the tax deeds were taken, and statements were furnished to the court of the amounts claimed to be due the counties respectively by reason of such delinquent and unpaid taxes at the time they applied to the court for distribution of the sum to which each county claimed to be entitled, and such payments were made accordingly. Counsel for the bondholders allege that an overpayment has been made by the court to Dawson County and also to Prairie County as hereinbefore set forth, and counsel for Dawson County claims that his client is entitled to all the money still remaining in the registry of the court.

No part of the Yale tract was designated as irrigable land and was therefore not subject to the lien of the bondholders, and the compensation deposited, after payment of any taxes that may be found delinquent, should be distributed to the former owners of said tract. As to the tract, 1-47 and 1-53, the court is satisfied that the compensation therefore on deposit in the registry of the court should be distributed to the Scottish American Mortgage Co., Ltd., or its assignee. It seems doubtful whether any portion of this tract in Sec. 14 was ever property included or properly designated as an irrigable area, and reference is made to consideration theretofore given this subject.

In regard to the recent question propounded by the court to counsel on the subject of proper distribution of funds in the court registry only one brief has been received, and that one came from Mr. Leonard, who is entitled to commendation for his research; although the question was only partly answered; however, upon further consideration of the subject distribution will be made in the manner herein set forth.

■ Messrs. O'Neil and Leonard, representing the bondholders, have suggested to the court the propriety of allowing them compensation for legal services rendered the bondholders, intending that such allowance should be fixed by the court in a sum commensurate with the value thereof and be paid to them out of the registry of the court. It would appear that such services have inured to the benefit of the parties thus represented, but that no authority has been cited, and the court knows of none, which would authorize the payment of counsel fees as requested in a proceeding of this kind.

After consideration of the calculations submitttd by Messrs. Leonard and O'Neil on the subject of overpayment from the registry of the court to the counties, Dawson and Prairie, the court has come to the conclusion that counsel have accurately set forth the total amounts actually due the counties, and the exact amounts representing the overpayments made to the counties, which amounts will be added to the sum now remaining in the registry as due the bondholders, and the excess payments will be ordered returned by the counties to the registry of the court. The overpayment to Dawson County is the sum of $3,315.06, and the overpayment to Prairie County is the sum of $327.86.

The statement of facts in respect to overpayment to the counties appears on page 5 of counsel's brief, received June 21st, 1947, reading as follows:

"Correction on Distribution

"As shown by the files the complaint divided the lands into twenty-four separate tracts with separate ownership and interests and the answer of Dawson County conformed thereto and said County made claim to said fourteen tracts and Prairie County made claim to seven tracts; the details in that respect are shown by the answers. Through error and nearly a year prior to the actual determination of the value of the separate tracts and in accordance with an advance estimate on each of said tracts on July 11, 1944, Dawson County was paid on tracts 494-1 to 494-14, the sum of $10,628.57 and Prairie County was paid on tracts 511-1 to 511-7, $2725.54, but when

 

the commission finally made the award and the final judgment was entered establishing the award the following errors were ascertained which are beyond dispute, to wit:

"Dawson County

| | | County was paid, estimated tax. |
|---|---|---|
| Tract 494-8 award | $680.50 | $695.58 |
| Tract 494-11 award | 995.00 | 2348.94 |
| Tract 494-13 award | 606.90 | 2552.94 |
| Total | $2282.40 | $5597.46 |

"Hence, the county was over-paid $3315.06/
"Prairie County

| Tract 511-6 award | $890.00 | paid estimated taxes $1217.86. |
|---|---|---|

"Prairie County was overpaid on that tract $327.86.

"The mistake is evident and was easily made. There is no dispute as to the general taxes but the awards on the separate tracts in the tracts mentioned were less than the taxes. It is possible that the commissioners could have increased the awards but did not do so and hence under Section 258a it is proper, we submit, for the Court to enter a judgment against the United States for the additional sum of $3642.92, representing the excess awards made to the Counties on the tracts above as the Counties got more than the awards which is clearly improper."

Counsel for the Government agrees that the figures on overpayment to the counties submitted by counsel for the bondholders is substantially correct and should be accepted by the court. Counsel for Dawson County has not filed any brief or made any showing in response to the recent request of the court relating to the subject of distribution of the funds, but has taken issue with counsel for the bondholders and the Government relating to overpayment to the counties, with which the court is unable to agree.

Accordingly it is ordered and this does order that the Counties, Dawson and Prairie, return forthwith to the registry of the court the respective amounts above set forth as overpayments, and in default thereof, the proper authorities of the Government will be so advised, in order that proceedings may be commenced for the recovery of such overpayments; and in the meantime, under Section 258a judgment for the additional sum of $3642.92, representing the overpayments, will be ordered, and is hereby ordered, entered against the United States, and distribution of the funds in the registry of the court will be made according to the foregoing decision. Exceptions are allowed counsel.