JOHN GORMAN, APPELLANT, v. THE BOARD OF COMMISSIONERS OF BOISE COUNTY ET AL., RESPONDENTS.

COUNTY COMMISSIONERS—JURISDICTION.—A board of county commissioners is a tribunal created by statute, with limited jurisdiction, and only *quasi* judicial powers, and can not act except in strict accordance with the statute.

ASSESSOR—TAX COLLECTOR—OFFICIAL OATH.—An assessor and tax collector, whose oath of office as both assessor and tax collector is indorsed on his bond as assessor, is not required to take another oath as tax collector when he files his bond as tax collector.

OFFICIAL BOND, APPROVAL OF COMMISSIONERS.—It is the duty of the board of county commissioners to approve the bond of an assessor and tax collector *pro forma*, if, upon its face, it is *prima facie* good. The board may, at any time afterwards, cite the sureties, to make a further justification, and, in case it is deemed insufficient, may cite the officer to show cause why his office should not be declared vacant.

COUNTY COMMISSIONERS—RECORD—PRESUMPTIONS.—The order of a board of county commissioners, requiring the officers-elect to give bonds in particular sums, is of no force except as to the officers-elect at the time of making such order. The board of county commissioners is required, by law, to keep a record of its proceedings, and no presumption arises as to the regularity of any of their proceedings, not appearing of record, even though parties may have acted upon the supposed order of such board.

TAX COLLECTOR—OFFICIAL BOND.—A tax collector is not required, by statute, to give a bond with sureties in double the amount of the whole penal sum of his bond.

COUNTY COMMISSIONERS—JURISDICTION.—A board of county commissioners has no power or authority to pass upon the malfeasance or misfeasance of an officer; those questions belong to a higher tribunal, having jurisdiction to punish the officer, if found guilty.

INTENDMENTS—OFFICERS.—Every intendment of the law is to be taken in favor of those whom the people have elected to serve in an official capacity. Courts should not seek an excuse to defeat the will of the people, but rather to carry out and protect it.

APPEAL from the district court of the second judicial district, Boise county.

*George Ainslie, Alanson Smith, and Milton Kelly,* for the appellant.

*H. E. Prickett and J. W. Huston,* for the respondents.

WHITSON, J., delivered the opinion. HOLLISTER, J., concurred. NOGGLE, C. J., dissented.

John Gorman was elected at the general election in

November, 1872, to the office of assessor and tax collector of Boise county for the term of two years, commencing on the first Monday in January, 1873, on which day he filed the necessary bond as such assessor, which was approved by the board of county commissioners. He also took the necessary oath as assessor and tax collector, which was duly indorsed on the bond. On the eighth day of April, 1873, Gorman presented an additional bond as tax collector to the board in the sum of fifteen thousand dollars, which was rejected by the board for reasons stated by them, but not necessary here to consider. On the eleventh day of April, 1873, he presented a second bond as tax collector, to the board, which was also rejected, for the reasons following, to wit:

"April 11, 1873, the bond of John Gorman as tax collector of Boise county is rejected for the reasons that it is not executed by sufficient and responsible sureties. James Hoey, one of the offered bondsmen, stated, after he had signed the bond, that he was drunk when he signed the bond, and that he would not be worth a dollar if his debts were paid."

Further, "also Matt. Luney, who was on the bond offered on the eighth inst. for fifteen hundred dollars, whom we consider good for that amount at that time, is on the one offered this day for two thousand dollars; and in the mean time we have ascertained that he is on another bond for the sum of two thousand dollars, of which we had no knowledge on the eighth instant. He is also on the sheriff's bond as tax collector for the sum of one thousand two hundred and fifty dollars. This, with his other debts and liabilities, we consider more than his property is worth. Also Charles Kolny, one of the offered bondsmen, is liable on the bond of J. F. Cheatly, road supervisor of road district No. 2, for the sum of two thousand dollars, and on the bond of R. K. Errin, constable of Placerville, for the sum of one thousnd dollars, and is assessed for only two thousand one hundred dollars.

"Also Hugh Craig's property consists principally of a

ranch, which may be held as a homestead, and that his indebtedness is equal to the remainder of his property.

" Also on one of the commissioners saying that he would like to have some of the offered bondsmen appear before the board for further justification, Mr. Gorman replied that he would not bring any of them. For the foregoing reasons we are unwilling to accept the bond of John Gorman as tax collector for the years 1873 and 1874, who is now defaulter to Boise county in the sum of six thousand four hundred and fifty-seven dollars and twenty-four cents, or more. On the twelfth of April, 1873, the board made the following order, to wit:

"'April 12, 1873. It is hereby ordered by the board of county commissioners of Boise county that the office of county assessor and *ex officio* tax collector held by John Gorman be, and the same is hereby declared vacant, for the following reasons, to wit:

"'First, the said Gorman has failed' to file a good and sufficient bond, as tax collector of said Boise county. Second, the said John Gorman is now a defaulter to Boise county, as county assessor and *ex officio* tax collector, in the sum of ($6457.24) six thousand four hundred and fifty-seven dollars and twenty-four cents. Third, the said John Gorman has been willfully neglectful in the discharge of his duties as assessor and *ex officio* tax collector of Boise county. Fourth, that the said John Gorman has shown himself incompetent to properly discharge the duties of said office of assessor and *ex officio* tax collector of Boise county.

"'It is hereby ordered by the board of county commissioners of Boise county that Ben. T. Davis be, and he is declared appointed assessor and *ex officio* tax collector of Boise county for the years 1873 and 1874, in place of John Gorman, removed from office.' The bondsmen being satisfactory, the bond of Ben. T. Davis, as assessor and tax collector, was approved. It also appears from the record that the board, in October, 1868, fixed the bonds of the officers elect, and among them the tax collector's bond at fifteen thousand dollars."

From the order rejecting his bond, as also the order declaring the office of assessor and tax collector vacant, and the order appointing Davis assessor and tax collector of Boise county in his place, Gorman appealed to the district court and the court affirmed the decision of the board.

The court, however, in passing upon the questions involved in the case, says: "If I should or could be confined to the subsequent action of the board of county commissioners, I should be compelled to say that while they have made a correct decision, they have offered no good reason for their ruling." The court then proceeds to give the reasons upon which to base the decisions affirming the action of the board, which are, substantially:

1. That the action of the board of commissioners of October, 1868, in fixing the amount of the tax collector's bond, was binding on Gorman.

2. That his oath of office was not indorsed on the bond.

3. That when the penal sum of any bond is fifteen thousand dollars, the sureties must be bound in double that sum, and each justify in the amount for which he becomes liable.

Gorman now appeals to this court. We do not think that the reasons given by either the commissioners or the district court can be sustained, or that the action of either, aside from the reasons given, can be affirmed, and in view of the various reasons given by each, we think that all the questions involved can be disposed of under six general heads, and under those we will consider the case.

1. A board of county commissioners is a tribunal created by statute with limited jurisdiction and only *quasi* judicial powers, and can not proceed except in strict accordance with the mode provided by statute. It has no right or authority to adopt any other mode than that required or provided by statute. The statute is its guide, and a strict adherence to it is as essential as that of the mariner to his compass. The whole tenor of the text-books and the authorities is to this effect. There is and can be no safety in any other rule. Men's rights can not be defeated by the mere discretion of such an inferior tribunal, and not even by one of much more extended jurisdiction. Leave, when once given, to go out-

side of the statute and make rules and regulations to govern in such cases, would be very dangerous, not only to the letter but to the spirit of the law. The rule which will allow a board of commissioners to suspend a county officer without a "thus saith the law" would allow the district court to suspend the board, and this court to suspend the district court.

2. The board did approve Gorman's bond as assessor, and he took the oath both as assessor and tax collector, which was indorsed on this bond. The provision of the statute, therefore, which requires the tax collector to indorse his oath of office upon the bond required of him by the twenty-fourth section of the revenue act, can have no reference to any case except when the assessor has failed to take the oath as tax collector. When he took the oath as assessor, Gorman took the oath of office as assessor and tax collector at the same time, and the most that can be said of his action in that respect is that he took it before required to do so. Can it be claimed that by reason of such action he would not be liable for perjury in case he refused or failed to execute his duties according to the oath he had taken? Certainly not. It could not strengthen the bond, or bind any stronger the liabilities of the sureties, and is only a requirement for convenience, and therefore merely directory.

3. It was the duty of the board to approve the bond of Gorman *pro forma*, if upon its face it was *prima facie* good. There is no provision of statute pointing out any other course. Bonds are required to be in a certain amount and form, and the sureties are required to have certain qualifications which are to be determined by their several oaths. The seventh section of the law concerning the official bonds of officers in the case of a county officer, requires that the surety should justify that he "is a resident and freeholder or householder within such county, or an adjoining county, and that he is worth the amount for which he becomes surety over and above all his debts and liabilities in unincumbered property, situated within this territory, which may be levied upon and is not exempt from execution and forced sale."

This is all that is required in the first instance. After having approved the bond the board might at any time afterwards require a further justification, under the provisions of the section just cited, if from any cause the board believed the sureties insufficient, and having once determined that the bond was insufficient might cite the officer to appear and show cause why the office should not be declared vacant. It appears that the county commissioners consulted the assessment roll for the purpose of impeaching the oath of those who had become sureties on this bond, and this too without giving the notice to either of the sureties to make a further justification. This mode of proceeding is not only in direct conflict with the seventh section of the act of the fourth session concerning the official bonds of officers, but very unjust to the sureties.

Besides all this the records show that the test provided by the statute, for determining the sufficiency of sureties, was not applied, and was entirely without the statute, even had the proper time arrived to test the sufficiency of the sureties, by way of further justification. The assessment roll of Boise county might not show all the property owned by the surety, and was therefore no good index to his worth.

4. The order of the board of 1868, requiring the tax collector elect to give bond in the sum of one thousand five hundred dollars, could not extend beyond the term of the tax collector then elect. The fact that assessors have been acting upon that order can make no difference.

The giving of the bond in any greater sum than that required by law or by the board, was entirely gratuitous on the part of Gorman. All the proceedings of the board are required to be made of record by the provisions of the sixth section of the act of the fifth session creating a board of county commissioners, etc., and hence it follows that anything not so of record, is no part of the proceedings. Nothing can be inferred or presumed as to the regularity of the proceedings of an inferior tribunal, with the limited jurisdiction which has been conferred upon the boards of county commissioners.

I consider that the object of the twenty-fourth section of

the revenue act, was not only to fix the amount of the tax collector's bond, but also to make provision for requiring a bond in a greater amount whenever the exigencies of the case required it, and it is the duty of the commissioners to see that a bond in sufficient amount has been tendered by the tax collector; and it will not do for them to satisfy themselves that the matter is understood. It is their duty to make it understood by making it a matter of record as to what they want and require in the premises. A failure to do this is as much to be regarded as any little informality which officers may have neglected. It will not do to say that technicalities must be overlooked in a court, and yet the same court require the utmost particularity of those whose rights are being passed upon.

Again, Gorman did give a bond in the sum of fifteen thousand dollars, and the reason urged by the court below for rejecting the bond, to wit, that it did not conform to the requirements of the eighth section of the act of the fifth session concerning the official bonds of officers, can have no application to the assessor and tax collector, as the twenty-fouth section of the revenue act makes special provision in regard to the bond of assessor and tax collector.

5. The board of commissioners has no authority to pass upon the malfeasance, or misfeasance of any officer. The statute is plain and unequivocal upon that question, and it would be a novel proceeding if a board of county commissioners could declare an officer guilty of that for which the law imposes a heavy fine, and in some cases imprisonment, and having done so without hearing the officer or even giving him an opportunity to be heard, declare his office vacant, and then appoint his successor. Such a proceeding would soon render useless the criminal courts, and make the officers elected by the people "mere clay in the hands of the potter."

6. Every intendment of the law is to be construed most strongly in favor of those whom the suffrages of the people have elected to serve them. Courts should not seek for excuses to defeat the will of the people as expressed at the ballot-box, but should rather seek, if seek at all, for some

excuse to protect that will inviolate. In this is our only safety. We have too much of that spirit which seeks to thwart the will of the people, and we have also seen some of the deplorable consequences.

Judgment of the court below reversed.