(No. 6249. February 24, 1936.)

INDEPENDENT SCHOOL DISTRICTS Nos. 1, 2, 3, 5, 7 and 9, in Twin Falls County, Idaho, Respondents, v. COMMON SCHOOL DISTRICTS Nos. 1 et al., Twin Falls County, Idaho, Appellants.

[55 Pac. (2d) 144.]

Frank L. Stephan and J. H. Blandford, for Appellants.

M. J. Sweeley and Everett M. Sweeley, for Appellants.

E. E. Babcock, for Appellant County Officials.

James R. Bothwell, Harry Povey, Walters, Parry & Thoman, John R. Keenan, Rayborn & Rayborn, E. L. Rayborn, J. H. Barnes, Turner K. Hackman and Chapman & Chapman, for Respondents.

AILSHIE, J.—On July 5, 1930, plaintiffs, six Independent School Districts in Twin Falls County, brought this action against defendants, twenty-five other school districts and their officers in the same county, for recovery of judgment against defendants for moneys unlawfully received and apportioned as public school moneys between January 1, 1926, and July 1, 1929. Bill of particulars, covering the various items misapportioned, was attached to the complaint. It is alleged that approximately $46,158.52 passed to the credit of the defendants, on account of the misapportionments; and plaintiffs did not receive all moneys that they were entitled

to receive. The unlawful apportionment was not discovered until April 15, 1930, when an audit was furnished by an accountant.

It is not alleged that the money was misapportioned at the instance of the school districts but it was received and used by each for proper school purposes prior to the commencement of this action. The apportionment for the period was based on chap. 68 of the 1925 Sess. Laws; this basis was changed by chap. 134, 1931 Sess. Laws (I. C. A., sec. 32–806). In the apportionment of 40 per cent of the whole amount of money, in the proportion of the number of teachers regularly employed, computations were in error because the county superintendent failed to extend the factor, used to multiply by the number of teachers, to a sufficient number of decimal periods to make an accurate computation.

Default was entered of additional parties made defendants (Common School Districts Nos. 4, 11, 22, 32, 43 and 47) for failure to appear and answer. The cause was tried before the court without a jury. During the course of the trial, by stipulation, seventeen additional independent and common school districts were joined *as co-plaintiffs* and participated in the judgment awarded. Judgment was entered on January 4, 1935, that reapportionment of the public school moneys from Jan. 1, 1926, to July 1, 1929, be made, specifying the moneys received by the various school districts for the first 40 per cent, second 40 per cent, 3 per cent and 17 per cent (provided by the apportionment act, chap. 68, 1925 Sess. Laws) and specifying the amounts of money the districts should have received, the total amount of moneys to be adjusted being $46,158.52. The amounts to be apportioned and received by each of the twenty-three independent and common school districts are set out in full in the judgment. It is also adjudged that in future apportionments to the defendant school districts shall be deducted "such sum as is not presently needed to maintain the public schools of said respective defendants" to satisfy the judgment entered, "payable *pro rata* to all of the judgment creditors until . . . . paid in full"; that defendants at their annual meetings "shall levy the maximum amount of taxes that may be levied pursuant to law until the judgment . . . . shall be paid in full"; that the court shall retain jurisdiction of this

action for the purpose of enforcing the judgment. From this judgment defendants appeal.

The argument, as contained in the briefs, takes a wide range over the field of governmental sovereignty and ownership of school funds and the liability of the state's legal subdivisions, for the mistakes or inefficiency of the various officers and agents charged with the duties of carrying into effect the will of the state as expressed in legislative directions and mandates. Much industry and research have been indulged by counsel in calling to our attention authorities touching upon many phases of the discussion as here presented; but we shall refrain from entering upon a consideration of many of these subjects for the reason that to do so would be of no substantial value to an opinion in this case.

The decision of this case, as we see it, must necessarily turn on the answer to the questions: First, where school funds have been improperly apportioned to various school districts, and paid over to them and used for school purposes, can the district which has received less than its proportionate share maintain an action against the district which received more than its share, and compel the payment thereof out of future apportionments; and second, do the statutes of limitation run against such actions, the same as in other cases, and if so, *what statute* applies?

Turning our attention to the first inquiry, we find that each school district, whether common or independent, is made a body corporate and is given the power to sue and be sued. (I. C. A., sec. 32–303; *Corum v. Common School Dist. No. 21,* 55 Ida. 725, 47 Pac. (2d) 889, 890; *Ewin v. Independent School Dist.,* 10 Ida. 102, 108, 77 Pac. 222; *Evans v. Power County,* 50 Ida. 690, 700, 1 Pac. (2d) 614.) The grant to the district of the power to maintain and defend actions implies, of course, that the legislature intended and expected that the school districts would prosecute any actions they might deem necessary for the protection and preservation of the school funds and property. It was likewise intended that they would conduct defenses of any actions which might tend to impair or prejudicially affect school district property or interests. It is a general rule

that an unqualified grant of power "to sue and be sued" carries with it all powers that are ordinarily incident to the prosecution and defense of a suit at law or in equity. (56 C. J. 779 et seq.)

█ █ It is true that the school district is a mere agency of the state. (*Common School Dist. No. 61 v. Twin Falls Bank & T. Co.*, 50 Ida. 711, 716, 4 Pac. (2d) 342.) As such,. however, it is charged with the sovereign duty of maintaining the schools within its particular territory of the state and of receiving funds and property and managing, controlling and expending the same in the interest of public education. In this respect and for *this purpose* the school district is the agent of the state in its particular territory. It would, therefore, amount to neglect of its duty and an unfaithful stewardship for it to fail or neglect to claim and demand the public funds and property belonging to its territory, and meant and intended for application in furthering the educational advantages of the children of that particular community of the state. In this respect and to this end, the officers of the school district are charged with the sovereign duty of furthering and promoting the cause of general education. (Const., art. 9, sec. 1; *Fenton v. Board of County Commrs.*, 20 Ida. 392, 402, 119 Pac. 41; *Howard v. Independent School Dist.*, 17 Ida. 537, 540, 106 Pac. 692.)

█ █ Since every school district within the state is a public corporation and an arm of the state, charged with these duties, it seems clear that one district may maintain an action against another, where by either mistake, fraud or inefficiency of public servants, the one district has received and expended for educational purposes, in its territory, more than its share of the public fund; and the other district by reason thereof has received less than its share; and we have not been able to discover any valid reason why such an action may not be maintained. Indeed, if a district cannot prosecute such an action, then clearly there is no way in which the wrong or misapplication of funds may be corrected or redressed. Nor is it a sufficient answer to say that, since the one district has received more money than it was entitled to, and has in fact expended it *for school purposes* within its district during the year for which collected and apportioned, it cannot be required to withhold from a future

apportionment or future taxes enough money to reimburse the district which suffered by loss of the portion to which it was legally entitled.

To judicially force a debtor to pay his debt necessarily deprives him of some present necessities or privileges, as the case may be, which he enjoyed during his more affluent period, but that has never (so far as we are aware) been successfully advanced as a reason for exemption or discharge from paying his debt when haled into court to answer why he does not do so. The necessity for school districts sometimes paying judgments was recognized by the legislature in the enactment of I. C. A., sec. 32–704, in which it is provided:

"The amount of mill levy to be determined and certified by the board of trustees of such school districts to meet accruing bonded indebtedness *and judgment obligations,* shall be a sufficient amount to meet *such obligations.*"

The fact that the school district is not the owner, in its proprietary capacity, of the school funds apportioned to it does not deprive it of the right to receive the funds and disburse them for the intended purposes and to that end to maintain any suit or action that may become necessary for their recovery or protection.

■ Nor do we consider the contention sound, that the apportionments are made and expended in a *specific year,* and that they are intended and used for the benefit of the youth who are attending *that year's schools* and that to take the money out of an apportionment and taxes several years later, to reimburse a district, amounts to visiting upon another generation of students the loss suffered by students who have passed from the student class, and from which the previous body of students profited. A school district is a continuing corporation. (*Corum v. Common School Dist. No. 21,* 55 Ida. 725, 47 Pac. (2d) 889, 891.) It may be in perpetuity, devoted to the purpose of promoting and fostering general public education among the youth of the district, and is not unlike an eleemosynary trustee; indeed it has sometimes been so chronicled. (*People v. Cogswell,* 113 Cal. 129, 45 Pac. 270, 35 L. R. A. 269; *Collier v. Lindley,* 203 Cal. 641, 266 Pac. 526, 528.) The corporate entity is but a

trustee for the local public. (*Pearson v. State,* 56 Ark. 148, 19 S. W. 499, 35 Am. St. 91.)

It follows that a fund apportioned to or collected for a specific school district is a trust fund and so long as intact or capable of identification may be followed as a trust and preserved by the orders of a court of equity, but this is not always possible, nor is it an exclusive remedy. The recipient of the fund may be proceeded against as for money had and received. (*Vigo Tp. v. Board of Commrs., etc.,* 111 Ind. 170, 12 N. E. 305, 309; *Center School Tp. v. State ex rel. Board, etc.,* 150 Ind. 168, 49 N. E. 961, 962; *Argenti v. City of San Francisco,* 16 Cal. 255, 282; 2 Perry on Trusts, sec. 828; 56 C. J. 756.)

The amendment of the statute providing a new basis and method of apportionment of school funds does not deprive the districts of their right to recover on causes of action which accrued under the repealed statute. (*McCoy v. Krengel,* 52 Ida. 626, 636, 17 Pac. (2d) 547; *Bellevue State Bank v. Lilya,* 35 Ida. 270, 273, 205 Pac. 893; *Cook v. Massey,* 38 Ida. 264, 267, 220 Pac. 1088, 35 A. L. R. 200; *Lawrence v. Defenbach,* 23 Ida. 78, 82, 128 Pac. 81.)

We now come to a consideration of the application of the statutes of limitations.

It is an undisputed fact that none of the parties to the action had any notice of the mistake in apportionment of the funds, which resulted in their disbursement to the prejudice of the respondent districts, until the audit was made public on April 15, 1930. Under sec. 5-218, I. C. A., the "action" being for relief on the grounds of "mistake," it necessarily follows that "the cause of action" did not accrue "until the discovery by the aggrieved party, of the facts constituting the . . . . mistake."

Under this statute either one of two things may toll the statute, namely, (a) undiscovered fraud, (b) undiscovered mistake. We had this statute under consideration in *Hillock v. Idaho Title & Trust Co.,* 22 Ida. 440, 450, 126 Pac. 612, 42 L. R. A., N. S., 178, a case where an abstract company had made a mistake in preparation of an abstract which it sold to a customer. The party purchasing the abstract subsequently suffered a loss by reason of the mistake, which he did not discover until demand was made on him for dam-

ages. We there considered the question of limitations of actions, and, in determining whether the case fell within the provisions of this statute, said:

"The test, therefore, under subd. 4 of sec. 4054 [I. C. A., sec. 5-218, subd. 4], is not whether the fraud or mistake occurred in a contract or independently of contract, but the test rather is whether the action seeks relief from or on account of a fraud or *mistake*."

See, also, *Trimming v. Howard,* 52 Ida. 412, 416, 16 Pac. (2d) 661.

It is contended that, the school districts possessing no powers and being bound to no duties except those prescribed by statute, the action here is one upon "a liability created by statute other than a penalty or forfeiture," as prescribed by the first subdivision of the section (sec. 5-218). It is true that the right to maintain the action and to sue the districts is statutory, but it is likewise true that the *cause of action* arises out of the "mistake" (referred to in subd. 4, sec. 5-218) made by the public officer charged with the duty of apportioning the funds; and that but for the *mistake* the cause of action would not have *accrued.* It therefore follows that the statute was tolled until the *mistake* was discovered.

We discover no legal objection to the form of the judgment or the method it provides for its satisfaction. It is not only within the general powers of the court of equity but appears to be fully justified by the statute. (I. C. A., secs. 32-704, 32-702 and 32-303; *State v. Board of Commrs.,* 12 Mont. 503, 31 Pac. 78.)

The judgment is affirmed, with costs to respondent.

Budge, Morgan and Holden, JJ., concur.

GIVENS, C. J.—The statute of limitations had run against the first year's overpayment, which therefore should have been eliminated. Otherwise I concur.