764 P.2d 838

The CITY OF REXBURG, a municipal corporation, Plaintiff-appellant,

v.

MADISON COUNTY, a municipal corporation; Madison County Commissioners, Dell Klinger, Dell Barney and Wayne Beck; and Nellis H. Garner, Madison County Auditor; and Nellis H. Garner, Dell Klinger, Dell Barney and Wayne Beck, as individuals, Defendant-respondents.

The CITY OF SUGAR CITY, a municipal corporation, Plaintiff-appellant,

v.

MADISON COUNTY, a municipal corporation; Madison County Commissioners, Dell Klinger, Dell Barney and Wayne Beck; and Nellis H. Garner, Madison County Auditor; and Nellis H. Garner, Dell Klinger, Dell Barney and Wayne Beck, as individuals, Defendant-respondents.

Nos. 16763, 16764.

Supreme Court of Idaho.

Feb. 3, 1988.

On Rehearing Nov. 30, 1988.

Smith & Hancock, Rexburg, for plaintiffs-appellants; J.D. Hancock (argued).

Rigby, Thatcher, Andrus, Rigby & Perkes, Rexburg, for defendant-respondents. Gordon S. Thatcher (argued).

BAKES, Justice.

For 22 years Madison County apportioned to the cities of Rexburg and Sugar City, individually, only 5%, rather than the statutory 50%, of county road taxes assessed on properties situated within the cities. The mis-apportionment was caused by an inadvertent decimal point error. The cities sued for back taxes and the district court granted summary judgment for the county and its officers, noting that all applicable statutes of limitation had run. The cities of Rexburg and Sugar City appeal. We affirm.

We are asked to decide if the instant situation involves "a liability created by statute." If it does, the three-year statute of limitations under I.C. § 5–218(1) has run, and our decision will be dispositive of all other issues raised. We hold that this case involves "a liability created by statute" and that the statute of limitations has run.

Prior to 1963, Idaho law entitled each city to receive 25% of county road and bridge taxes levied on property within the city. Effective March 27, 1963, the statute was amended to raise the percentage to 50%. This became I.C. § 40–2709(1) and is now, with immaterial changes, I.C. § 40–801(1)(a).

For the next 22 years Madison County apportioned to appellants only 5%, rather than the statutory 50%, of county road

taxes assessed on Rexburg and Sugar City properties. The county's error was an apparent inadvertent decimal point error—using .05 rather than .50 as the factor.

For the same 22 years, Rexburg and Sugar City, as well as Madison County, budgeted for roads and bridges by projecting revenue on the same mistaken factor. All three parties expended their respective shares only for roads and bridges.

The cities' mayors discovered the error and called it to the attention of Madison County on October 31, 1984. Madison County immediately changed the apportionment as to all future distributions, commencing November, 1984. In September, 1985, Madison County corrected the mis-apportionment back to August, 1982—*i.e.*, repaying three years back, claiming that all prior years were barred by the statute of limitations. Rexburg and Sugar City filed these actions to recover the mis-apportionment back an additional 19 years, to March 27, 1963.

Payment by Madison County to the cities is governed by what is now I.C. § 63–2104. That statute has not been materially different since March 27, 1963. It requires a monthly settlement between the county and the cities regarding funds paid to the county and apportioned to the cities in the preceding month.

The trial court granted summary judgment for the auditor and commissioners on the claims against them personally; it found that they had "acted in all matters herein in good faith and within the scope of their respective authority." This has not been appealed.

The district court separately granted summary judgment in favor of the county, holding that I.C. § 5–218(1) was the proper statute of limitations, and that three years had run. Thereafter, the cities filed a mo-

tion to alter, amend or reconsider. It was denied. This appeal followed.

It is axiomatic that upon motion for summary judgment all facts are to be liberally construed in favor of the party opposing the motion who is also to be given the benefit of all favorable inferences which might be drawn from the facts. Summary judgment should be granted only when the pleadings, depositions, affidavits, and admissions indicate that there is no genuine issue of material fact. I.R.C.P. 56(c); *Rice v. Miniver*, 112 Idaho 1069, 739 P.2d 368 (1987); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986). Here all issues can be decided as matters of law; no genuine issue of material fact remains for determination.

In pertinent part, the I.C. § 5–218(1) statute of limitations reads:

"Within three (3) years:

"1. An action upon a liability created by statute, other than a penalty or forfeiture. ...."

The phrase, "a liability created by statute," means a liability which would not exist but for the statute. *Dietrich v. Copeland Lumber Co.*, 28 Idaho 312, 154 P. 626 (1916); 51 Am.Jur.2d *Limitation of Actions* § 82 (1970); 54 C.J.S. *Limitations of Actions* § 83 (1948). Madison County's liability would not exist but for I.C. § 40–801; without the statute the county has no duty to pay over road and bridge taxes to the cities. Madison County's duty is purely a creature of statute.

The facts of this case reveal the following: (1) a statutory duty exists—it is not based in common law, contract, or in any other theory of law; (2) that duty requires Madison County to properly apportion taxes collected;[1] and (3) since 1913 Idaho stat-

---

1. **"40–801. Authority and procedure for levies.**—(1) The commissioners of a county highway system, the commissioners of a countywide highway district, and the commissioners of highway districts are empowered, for the purpose of construction and maintenance of highways and bridges under their respective jurisdictions, to make the following highway ad valo-

rem tax levies as applied to the market value for assessment purposes within their districts:

"(a) Two-tenths per cent (0.2%) of market value for assessment purposes for construction and maintenance of highways and bridges; provided that if the levy is made upon property within the limits of any incorporated city, fifty per cent

utes have required those tax moneys to be paid over to the cities at a specific date, a date certain.[2]

Since I.C. § 40–801 imposes a duty, and since I.C. § 63–2104 specifies a date certain for performance, liability attaches upon non-performance of the duty. Nothing more is needed.[3] Madison County's liability is one "created by statute," (specifically I.C. §§ 40–801 and 63–2104) and the statute of limitations commenced to run when the required duty was not performed. The reason for nonperformance matters not—all that must be proved is that the county failed to properly apportion and pay over road taxes on the dates certain. In the case at bar, these elements of the cause of action have explicitly been admitted.[4]

The cities rely heavily on two cases, *Independent School Dist. No. 1 v. Common School Dist. No. 1*, 56 Idaho 426, 55 P.2d 144 (1936), and *Cruzen v. Boise City*, 58 Idaho 406, 74 P.2d 1037 (1937). The cities contend that the factual settings of these cases are similar to the instant action, yet no "liability created by statute" was found. These two cases are clearly distinguishable, however. In *Independent School Dist. No. 1*, the county superintendant made a mistake in apportioning school funds among several school districts. The shorted school districts sued the districts which had received too much. The legal distinction is that there was no statute requiring one district to pay excess taxes to the other. The only basis for recovery was under the traditional law of restitution. There could have been no "liability created by statute" because there was, in the first instance, no statute.

*Cruzen* is also clearly distinguishable because it involved an action for breach of trust, rather than a statutory obligation. *Cruzen* was an action by a bondholder against the city to recover on local improvement district bonds. Boise City had no general or statutory liability on the bonds. The city clerk had embezzled the special assessments. The plaintiffs in *Cruzen* could not sue the city for violation of statute because there was no statute imposing liability; they could only resort to contract and trust theories. Again, there was no statute upon which liability could be based.

In the present case the plaintiff cities' claims are based on the taxing statutes, I.C. §§ 40–801 and 63–2104, and thus the claim involves "a liability created by statute." This being so, the three-year statute of limitations contained in I.C. § 5–218(1) has run as a matter of law. While other issues have been raised, the foregoing deci-

---

(50%) of the funds shall be apportioned to that incorporated city."

2. **"63–2104. Settlement by county auditor with municipalities.**—The county auditor must, on the second Monday of each month, transmit to the clerk of every incorporated city, every school district, and every other taxing district having a treasurer whose duty it is to receive, keep and disburse all moneys belonging to it, an order on the county treasurer, prepared upon blanks in the form supplied by the state tax commission, in favor of the treasurer of such incorporated city, or school district or other taxing district on or after the second Monday of the preceding month; provided, however, that in the months of July and January the money may be transmitted no later than the 25th of the month...."

3. That liability attaches upon nonperformance of the prescribed duty, without more, is further evidenced by I.C. § 40–804, which reads:
    **"40–804. Liability of county officials.**—All county officers entrusted with the assessment, collection, paying over or custody of taxes of any highway district within the county, and their sureties, shall be liable upon their official bonds for the faithful performance of their duties in the assessment, collection and safekeeping of the highway district taxes." (Present Section 40–804 was formerly codified at Section 40–1643.)
    The county officials' liability to properly apportion and pay over road and bridge taxes is derivative. It is derived from the primary liability of the county. Since counties cannot act for themselves, the statute is phrased in terms of "county officials"—persons who can act of their own volition and who are charged with performing the county's duties. In the instant case, they have no liability if the county has no liability.

4. Respondent's Brief, p. 3: "There had been a decimal point error resulting in apportioning only 10 percent of what should have been. This error had originated with a prior County Auditor and had been perpetuated over the years.... It was not known that the cities should have been receiving ten times what they did receive...."

sion is dispositive of them all. The district court was correct and its grant of summary judgment in favor of Madison County is *affirmed*. Costs to respondents. No attorney fees on appeal.

SHEPARD, C.J., and HUNTLEY, J., concur.

DONALDSON, J., sat, but died prior to the issuance of this opinion.

BISTLINE, Justice, dissenting:

The assessment of Justice Bakes that the misapportionment was caused by an inadvertent decimal point error finds me in complete agreement. However, that is the full extent to which it is possible to be in agreement with what he has written. The realities of the situation are in need of closer examination.

First, to properly apportion the tax receipts which are taken in by the tax collector is a duty or obligation *not* on the county of Madison, or of any of the 44 counties. That duty falls on the county auditor who is "to draw on county treasury funds to the clerk of every city, school district, and every other taxing district "... for the amount of all monies paid into the county treasurer and apportioned to such incorporated city, ..." I.C. Sec. 63-2104. Not only is this the duty of the county auditor, but there is also the duty of the tax collector to pay into the county treasury all monies found to be due to him to be apportional. I.C. Sec. 63-2103. Both of these county officials are required to execute and furnish official bonds, I.C. Sec. 31-2015, and:

> Whenever, except in criminal prosecutions, any special penalty or forfeiture or liability is imposed on any *officer* for nonperformance or malperformance of official duty, the liability therefore attaches to the official bond of such officer and to the principal and sureties thereon.

I.C. Sec. 31-2010 (1983 amendment). *That* is where liability is placed—on the county officers and their sureties—but not on the county. Those practitioners who may have served as county attorneys will be conversant with the fact that the official

bonds of county officers run to the county. Counties owe their existence to the Idaho Constitution, art. 18, sec. 1 of which observed the existence of the territorial counties, which in turn were recognized as legal subdivisions of the state, as judicially acknowledged (assuming such be a requirement—which is doubtful) in *Sims v. State,* 94 Idaho 801, 498 P.2d 1274 (1972). A county is an entity, more specifically a governmental entity, and can and does engage in governmental activity and in activity which is proprietary. County officers are provided for in art. 18, sec. 6, and sec. 7 thereof provides the manner of compensation and the requirement that fees received over and above expenses must be paid into the county treasury. As a readily observable fact, all of Article XVIII is devoted to and entitled: COUNTY ORGANIZATION. Section 10 contains the provisions for boards of county commissioners and sets the scheme for rotating four year terms and two year terms. Section 11 provides: "County, township and precinct officers shall perform such duties as shall be prescribed by law." The jurisdiction and power of such boards is stated in I.C. § 31-801, et seq.

All of the parties to the litigation, plus Justice Bakes and those who join his views, plus myself as well, are seemingly agreed that we deal with misfeasance, and not with malfeasance. "Malperformance," used in § 31-2010, a statute since 1887, is a term which has yet to find its way into any legal dictionary; obviously in the context of the statute I.C. 31-2010, it is considered as the equivalent of malfeasance. The prefix "mal" means "bad, evil, wrongful." Black's Law Dictionary, 861 (5th ed. 1979). "Malfeasance" is comprehensively defined:

> Evil doing; ill conduct. The commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which person ought not to do at all or the unjust performance of some act which the party had no right or which he had contracted not to do. Comprehensive term including any wrongful conduct that affects, interrupts or interferes with the performance of official duties.

*State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P.2d 1046, 1048. Malfeasance is a wrongful act which the actor has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with performance of official duty, or an act for which there is no authority or warrant of law or which a person ought not to do at all, or the unjust performance of some act, which party performing it has no right, or has contracted not, to do. *Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33, 42. It differs from "misfeasance" and "non-feasance" (q.v.).

Black's Law Dictionary 862 (5th ed. 1979).

"Misfeasance" is defined in much less space, and part of the definition is to distinguish it from malfeasance:

The improper performance of some act which a man may lawfully do. "Nonfeasance" means the omission of an act which a person ought to do; "misfeasance" is the improper doing of an act which a person might lawfully do; and "malfeasance" is the doing of an act which a person ought not to do at all.

Black's Law Dictionary 902 (5th ed. 1979).

The better historical statement as to the spawning of the "inadvertent error" is found in the written decision of Judge Young where, with only a serious error in (1) and (2) *i.e.,* county commissioners should read county *auditors* only, he summarized the facts as taken from the county auditor's affidavit tendered in support of the motion:

1. Since March 27, 1963, there have been statutes in effect which provide that the county *commissioners* are to pay over to the incorporated cities within their counties fifty percent of the levy assessed against property within the limits of any incorporated city for the construction and maintenance of highways and bridges. The current apportionment statute is Idaho Code Sec. 40–801(1)(a).

2. *Through an error originating with a prior county auditor,* the County Auditor and the County Commissioners, since March, 1963, have made erroneous calculations of sums to which the City of Rexburg and the City of Sugar City are entitled for road and bridge tax levies. Basically, the cities have received an apportionment of ten percent of what should have been apportioned to the cities.

3. Over all of the years the County Auditor and the County Commissioners, in good faith, and within the scope of the authority of their officers, have apportioned and paid road and bridge tax levies to the cities on the basis of this erroneous method of calculation.

4. Madison County calculated its road and bridge budget each year upon the assumption that it was receiving its proper share of the road and bridge taxes collected. All road and bridge taxes collected that were not distributed to the cities under the erroneous formula, were expended by the county for roads and bridges within Madison County in reliance upon its assumption that it was receiving its proper share of budgeted road and bridge taxes under the statutory apportionment formula.

Justice Bakes, following in those erroneous footsteps, completely fails to see that it is the statutory duty of the *auditor* to correctly apportion under I.C. § 63–2104. All of which is very clear. On the other hand, Justice Bakes has written an unusually convoluted opinion. His very first sentence states, "For 22 years *Madison County* apportioned to the cities of Rexburg and Sugar City etc." On the same page he continues, "For the next 22 years *Madison County* apportioned to appellants ... The *county's* error was an apparent inadvertent decimal point error etc." On page number 3 he writes that *"Madison County* immediately changed the apportionment etc.", and on the same page mentions I.C. § 63–2104, and states that "Payment (apportionment) by Madison County is governed by § 63–2104." Each and every one of these statements is far from being accurate. *Madison County* did none of the above. Rather it was the county auditor who had the duty, and made the mistake. From his assumed false premise he imag-

ines the auditor's duty somewhat derivatively falling upon the county itself, which he obscures at the end of a footnote, f.n. 3, page 90, 764 P.2d, f.n. 3 page 840:

> The county officials' liability to properly apportion and pay over road and bridge taxes is derivative. It is derived from the primary liability of the county. Since counties cannot act for themselves, the statute is phrased in terms of "county officials"—persons who can act of their own volition and who are charged with performing the county's duties. In the instant case, they have no liability if the county has no liability.
>
> [No authority cited for these novel propositions, nor is there any. The governmental county entity acts by and through its Board of County Commissioners.]

The county does *not* have any such duty as he suggests, but does have an obligation to turn over to the rightful recipients, the cities of Rexburg and Sugar City, the monies which lawfully were supposed to have been delivered to them, but which as a result of inadvertent clerical mistake, were turned over to Madison County. The county, since discovery of the auditor's mistake, has only paid over a pittance to the two cities, and refuses to disgorge a balance which is substantial, and the basis of this litigation.

What we see is as clear a case of unjust enrichment as a law professor could ever hope to display to a class. Admitted by all concerned is that the county's unjust enrichment has been occasioned not by any tortious conduct, i.e. malfeasance in office, but by the innocent mistake made by all of the auditors who have since succeeded the auditor who first committed the error.

Unjust enrichment is not unknown to Idaho jurisprudence, but today it is ignored as though there had never been a case—notwithstanding that the brief submitted by forthright, conscionable, and conscientious counsel for the county who brought it directly and inescapably to our attention:

> 5. A good faith recipient of a benefit received by mistake may be excused from restitution if he has changed his position in such a way as to make it inequitable that he restore it;
>
> *Westamerica Securities, Inc. v. Cornelius* [214 Kan. 301] 520 P.2d 1262 (Kan.1984 [1974])
>
> *Moritz v. Horsman* [305 Mich. 627] 9 N.W.2d 868, 147 ALR 117, 121 (Mich. 1943)
>
> *Messersmith v. G.I. Murray & Co.,* 667 P.2d 655 (Wyo.1983)
>
> Douthwaite, ATTORNEY'S GUIDE TO RESTITUTION
>
> (Allen Smith 1977)
>
> Sec. 9.2, pp. 369–374

And the weight of modern authority follows the basic principles in the "budget defense" adopted by an early California case (in contrast to an Idaho decision) in denying restitution of excess money received by a taxing unit at the expense of another taxing unit when both received and expended that for which they budgeted.

> *Fall River Joint Union High School District v. Shasta Union High School District* [104 Cal.App. 444] 285 Pac. 1091 (Cal.App.1930)
>
> *Contra: Independent School District No. 1 v. Common School District No. 1,* 56 Idaho 426, 55 P.2d 144 (1936)
>
> *Salisbury R–IV School District v. Westran R–I School District,* 686 S.W.2d 491 (Mo.App.1985)
>
> *Fort Wayne Community Schools v. State ex rel New Haven Public Schools* [249 Ind. 562] 233 N.E.2d 636 (Ind.1968)
>
> *School District No. 8 v. School District No. 15* [183 Neb. 797] 164 N.W.2d 438 (Neb.1969)

\* \* \* \* \* \*

5. IT WOULD BE INEQUITABLE TO COMPEL PRESENT TAXPAYERS TO REPAY IN CASH AN ACCUMULATED 20 YEAR, 900 PERCENT PER YEAR PAPER SHORTFALL IN ROAD TAXES.

*The cities seek recovery on the traditional restitution remedy compelling repayment of money received by mistake to avoid unjust enrichment to the*

*recipient.* There is a traditional defense to that recovery. It applies where the recipient has irrevocably changed his position in reliance upon receipt of the funds. He will not be compelled to repay the money if it would be inequitable under all the circumstances. P. & A. # 5, first part. An example is *Moritz v. Horsman,* [305 Mich. 627] 9 N.W.2d 868, 147 A.L.R. 117 (Mich.1943). An estate mistakenly distributed money to the adopted son of decedent's brother. In good faith he had expended some of the money for which he had no equivalent assets. To that extent he was not compelled to repay. A variety of circumstances where the defense is available and the developed requirements for its application are illustrated in the cases collected in Annotation, 40 A.L.R.2d 997 (1955) "What constitutes change of position by payee so as to preclude recovery of payment made under mistake". The defense is discussed in Douthwaite, ATTORNEY'S GUIDE TO RESTORATION (Allen Smith 1977) Sec. 9.2, pp. 369–374. One approach to the defense is to look at its flip side: If a change of position can be reversed, or the status quo can be restored, without expense, then it is no defense. *First National City Bank, v. McManus,* [29 N.C.App. 65] 223 S.E.2d 554 (N.C.App.1976).

Notwithstanding the foregoing content of Madison County's brief Justice Bakes, by what may be seen as the grandest *ipse dixit* of all, simply starts his treatise with a recitation of § 5–218(1), a liability created by statute, and never produces any statute creating liability on the part of the county. The best show which he makes is his statement that § 40–801 imposes *a* duty. Not at all so.

That section *empowers* the making of a levy. But, there is no *duty* to make a levy, and the power to make a levy is not one conferred alone of the county commissioners alone, as to their (county) highway system, but also to the commissioners of an (independent) county-wide highway district, and also to the commissioners of highway districts in general.

Sub-paragraph (a) thereof contains the word "shall," and it creates the requirement that 50 percent of the funds realized shall go to the incorporated cities within the particular district, by apportionment. The apportioning duty is placed where such accounting and bookkeeping should be placed—*on the auditor.*

Justice Bakes is nearly correct when he then recites that "Madison County corrected the mis-apportionment back to August, 1982—repaying three years back, ..." It is true that the county did do so, and well it should have. It had received monies by the inadvertence of the auditor which property should have gone to the cities, and in good conscience it had no right to retain those monies. It is *not* a question of being "liable" in the sense of being responsible for contractual or tort damages.

What Justice Bakes reads into the statute, and simply is not there—but is elsewhere—is any language allowing the county commissioners to take in the tax money or pay it out, i.e., make the requisite apportionment.

What a county or a highway district does, it does by its governing board. Here it could make a levy, and it did make a levy. And it did it by resolution. From there on the procedure falls on the other county officers.

With respect to the functions of the other county officers, who are bonded under the terms of their official bond as a prerequisite to taking office, those who "are entrusted with assessment, collection, paying over or custody of taxes ... shall be liable upon their official bonds for the faithful performance of their duties in the assessment, collection and safekeeping of the highway district taxes." I.C. § 40–804.

As stated earlier herein, Justice Bakes in his footnote simply imagines some duty on the part of the county derivatively flowing from the statutorily imposed duty on the county auditor. It would be interesting to know, assuming that the duty would and could descend upon the county by reason of the auditor's inadvertent mistake, just how it is that the county auditor and the county treasurer have been held blameless and

dismissed from the action. If they have no statutory liability, as has been held and not questioned, how does non-liability of the auditor derivatively fall upon the county commissioners, and then enure to the liability of the governmental entity known as Madison County?

With counsel for the county forthrightly bringing the *Common School District No. 1* to the attention of the Court, and conceding that it is contrary to the position which is advocated, it would have been normal for Justice Bakes to first consider that likelihood, at the least it became incumbent upon him to mention it. He does correctly note that that case was decided under the traditional law of restitution. Restitution is but another way of recognizing the doctrine of unjust enrichment—a terminology not as much in vogue in 1937 as now these 50 years later. He concedes that in that case no statute there involved created liability, hence no "liability" created by statute.

Methinks he treats the proposition much too lightly, and incorrectly as well. What Justice Ailshie wrote in the case for a unanimous Court was somewhat different:

It follows that a fund apportioned to or collected for a specific school district is a trust fund and so long as intact or capable of identification may be followed as a trust and preserved by the orders of a court of equity, but this is not always possible, nor is it an exclusive remedy. *The recipient of the fund may be proceeded against as for money had and received.*

*Independ. S. Dists., etc., v. Common S. Dist. 1.,* 56 Idaho 426 at 434, 55 P.2d 144 at 147 (1936) (emphasis added).

"Monies had and received," nowadays restitution, was the nature of the cause of action in the case. The Court specifically held that there was no liability created by a statute—meaning against the defendant Common School District No. 1. Likewise, there is absolutely no liability cast directly on the county itself for the mistake of a succession of county auditors.

The relief awarded in that school district case was by the Court *held* to be based on the *grounds of mistake* resulting in the unjust enrichment. Accordingly, the Court applied the provisions of § 5–218, I.C.A. (today I.C. § 5–218); and specifically subparagraph (4) thereof:

It is an undisputed fact that none of the parties to the action had any notice of the mistake in apportionment of the funds, which resulted in their disbursement to the prejudice of the respondent districts, until the audit was made public on April 15, 1930. Under sec. 5–218, I.C.A., the "action" being for relief on the grounds of "mistake," it necessarily follows that "the cause of action" did not accrue "until the discovery by the aggrieved party, of the facts constituting the.... mistake."

Under this statute either one of two things may toll the statute, namely, (a) undiscovered fraud, (b) undiscovered mistake.

*Independ. S. Dists., etc., v. Common S. Dist. 1,* 56 Idaho 426 at 434, 55 P.2d 144 at 147 (1936).

Neither the county auditor nor the cities discovered the mistake until the chance article in a newspaper, following which all activity by all parties, including the filing of the action, took place well within the ensuing three years after discovery. The county auditor made the mistake, and it cannot seriously be contended that there was a greater duty on the cities to discover an unknown mistake than there was on the county auditor or on the county itself—which was as apt to learn that it was being unjustly enriched as were the cities apt to learn that they were being mistakenly shorted. A case more on point with this than the school district case could not be imagined.

Moreover, the judgment entered in the *Common School District* case is unquestionably precedent for the entry of a judgment in favor of the cities of Rexburg and Sugar City for the full amount of withheld monies and suggests the format for so doing. In view of the sizeable amount, and restitution being an equitable remedy, equity might consider a small or no interest charge and a repayment schedule patterned

similar to the schedule of nonpayments which created the liability.

The *Cruzen* case followed in point of time 22 months later, and the Court membership had not changed in the interim. It is somewhat unlike the school district case, which was therein cited, in that an elected county auditor is not an agent of a county, but an appointed city clerk who is an agent of the city, and the city clerk's acts were ratified by the city.

Turning away from Justice Bakes' opinion after having found no enlightenment there as to any county liability for the mistakes of the county auditors over the many years, the brief of the county was resorted to in a final effort to see if there might actually be somewhere some support for the novel theory that the county is *"derivatively liable"* for the mistake of a county auditor.

There is found what might be perceived to be an aroma of a scintilla—just one whiff, at best. And, it just has to be what Justice Bakes has seized upon—because there just plain isn't anything else.

On page 21 is language much like that which Justice Bakes has incorporated into his opinion. On page 19 of respondent's brief the county commences a discussion of three cases which are absolutely not in point because they were all cases involving misappropriations by county tax collectors and efforts by the counties to recover from the county tax collectors and/or the sureties on their official bonds, and of course the three year limit was applied to actions which by their very nature were on a statutory liability. All of which has nothing to do with this case. But from there the county's brief adds this paragraph which must have caught the eye of Justice Bakes:

> The only other factual difference from the three misappropriation cases is that they involved suits against the officer and/or his surety, and not against the county. That should not change the result. The liability of the surety derives from the liability of the officer. The county auditor is a county officer acting for the county in apportioning and paying over road taxes to the city. For a breach of that duty the county would be liable. See *Bosworth v. Anderson*, 47 Idaho 687 [697], 280 Pac. 227, 229 (1929) holding a county liable for breach of a statutory duty in failing to disburse taxes to the taxing unit entitled thereto.

I will be the first to agree with the statement therein: "The liability of the surety derives from the liability of the officer." For certain if the county officer is liable, that is exactly what the surety has agreed to indemnify. But, I would be the last to agree that the word *surety* can be stricken, and the word *county* substituted in its place. The county hasn't gone surety for the county auditor. To the contrary, repeating for emphasis, the official bond of the auditor runs to the county, and that is what the three cited cases [1] were all about —suing to reach the surety.

At best in that paragraph, and undoubtedly what Justice Bakes sees as a *derivative* duty falling on the county, even though the county is not a surety, is the statement that "The county auditor is a county officer acting for the county in apportioning and paying over road taxes to the city."

That proposition has already been dealt with earlier herein. In short, it simply is not so. But, to the credit of counsel so advocating, he does that which Justice Bakes has not done, i.e., he advances a cite which thereby takes it out of the realm of being a 100 percent pure *ipse dixit*. "For a breach of that (county auditor's) duty the county would be liable. See *Bosworth....*"

*Bosworth* is an interesting case, and while it is worth seeing, it is not persuasive, and certainly not convincing. I will attempt to faithfully extract from it all that it contains in support of the statement which it is said to purportedly support. A first clue is headnote 7, p. 697 of 47 Idaho, headnote 7, p. 227 of 280 Pac.: "7. County

---

1. *Wonnacott v. Kootenai County*, 32 Idaho 342, 182 Pac. 353 (1919); *Canyon County v. Moore*, 34 Idaho 732, 203 Pac. 466 (1921); and *Lincoln County v. Fidelity & Deposit Co.*, 102 Idaho 489, 632 P.2d 678 (1981).

collecting sum for special improvement district *held* liable to bondholders for amount improperly diverted to predatory animal fund." The caption of the case is on the same page and does not name Madison County as a party but at the opening of the opinion is stated this:

> The city of Rexburg, Madison County, Pacific States Savings and Loan Company, Equitable Savings and Loan Company and Portland Mortgage Company became parties claiming rights adverse to appellant Bosworth, and they, in turn, have appealed from certain portions of the judgment.
>
> *Bosworth v. Anderson*, 47 Idaho 697, 705, 280 Pac. 227 (1929).

On that same page the Court sums up five issues presented, and it is easy to identify the issue alluded to in the county's brief: "4. The liability of the county for having apportioned to other taxing units or other improvement districts assessments collected by it for this improvement district." The discussion of that issue is set forth succinctly:

> The county collects the taxes for the city and other taxing units and is charged with the duty of paying such taxes and assessments when collected to the proper taxing unit and receives as compensation therefor one and one-half percent of all taxes collected (C.S., sec. 3224.)
>
> Of $36.37 collected for the special improvement district involved herein, the following amounts were improperly diverted:
>
> To the Predatory Animal Fund.....$  .17
> To Local Improvement District
>   No. 11 ........................ 18.56
> To City of Rexburg—General
>   Funds ........................ 17.64
>
> The city never received the amount diverted to the Predatory Animal Fund *and the county should be held liable therefor.*
>
> The balance was paid to the city but diverted by the city for purposes other

than the payment of the bonds involved herein. For this diversion the city and not the county is liable.

> *Bosworth v. Anderson*, 47 Idaho 697, 709–10, 280 Pac. 227 (1929).

The only clue to the imposition of liability on the county for seventeen cents is found in the points and authorities [2] which are set forth in the report of the case. The firm of Richards & Haga of Boise, Idaho, submitted an amicus curiae brief for the benefit of the Court which suggested that funds raised by taxes are trust funds, and must be applied where the law requires. The Court in holding the county of Madison liable for the seventeen cents observed that the county had a duty to turn the collected taxes and assessments to the proper taxing unit. 47 Idaho 709, 710. The cited section of the Compiled Statutes, § 3224, is yet another clue. The tax money collected must go into the county treasury to be thereafter apportioned. The county doesn't own the money in the treasury. The county treasurer holds it in trust to later be apportioned to the rightful recipients as provided by statute. The county itself will receive its proper share of the tax receipts. BUT, if the county by mistake receives some of those trust funds which belong elsewhere, i.e., in the hand of another taxing unit, and is thereby unjustly enriched, equity and good conscience require restitution to the party entitled. That is beyond doubt what was held later in the *Common School District* case. It appears very strongly that such was what happened in the *Bosworth* case. Of the $36.37 which should have gone to the coffers of the Special Improvement District, all but seventeen cents went to the City of Rexburg, for which it is liable by reason of having received monies to which it was not entitled—a ready case of unjust enrichment. The county was liable on the same basis for the seventeen cents it retained, which was not its money to keep. As to who made the mistake which unjustly enriched the county by seventeen cents, there

---

2. For the interested reader who only has access to the same case in 280 Pacific Reporter, mention is made that the publisher of the Idaho Reports for many years, Bancroft-Whitney Co., included in the reported case a synopsis of the relevant points and authorities excerpted from the briefs filed with the court.

is no enlightenment in the reported opinion, but it necessarily would have been a clerical mistake on the part of the auditor in computing the apportionment percentages. Idaho Compiled Statutes 1919, § 3326 Settlement by County Auditor with Municipalities, appears to read basically then as I.C. § 63–2104 reads today. It is found in Vol. I of the 1919 Compiled Statutes at p. 947, in Article 15, entitled Settlement of Revenue Officers. Nothing which I can find in that section, or either of the two volumes for that matter, shows even the slightest intimation that county commissioners were ever allowed to handle county revenues.[3]

As mentioned, the Madison County brief has brought to light an interesting case, but Justice Bakes in my view has ridden the *Bosworth* horse further than it should run.

## ON REHEARING

A petition for rehearing in this matter was granted and the cause reargued. The Court has reviewed the record and considered the arguments presented by counsel and continues to adhere to the views expressed and the conclusion reached in 1988 Opinion No. 7, filed on February 3, 1988.

SHEPARD, C.J., and BAKES, HUNTLEY and JOHNSON, JJ., concur.

BISTLINE, Justice, dissenting.

It has been said that there are none so blind as those who, having eyes, do not see. More blind, however, are those who will not see. Even more blind are those who delude themselves into believing that there is nothing to be seen.

The main premise of this appeal is the cities' claims to reimbursement of monies on the theory of *unjust enrichment*. Justice Bakes may not have *seen* the cities' briefs which so contend, but then he should have *seen* in my opinion a repetition of the pertinent portion of the cities' briefs. (At pp. 93–95, 764 P.2d at pp. 843–845). It would seem a bit discourteous for four members of the Court to ignore what an-

other member of the Court has written on the primary theory under which the cities seek relief. It has been observed that on other courts that at least some one of the majority will find time to refute the challenge raised by a dissent which informed the reader that the majority has chosen to ignore an important theory.

But, rather than defend themselves, those who join Justice Bakes naively allow themselves to be taken in by his statutory approach, *i.e.*, if the "instant situation" involves "a liability created by statute," a decision so holding neatly disposes "of all other issues raised." In that way the cities' unassailable theory of recovery has quietly been finessed into limbo. The reader who is unversed in legal matters will not have known (from the majority) that there is in Idaho a well-recognized doctrine of unjust enrichment.

Why Justice Bakes desires to reach his pre-ordained result is wholly speculative. How he does it is not.

(1) He states that for 22 years *Madison County* apportioned the collected road tax monies.

(2) He states that when the error was discovered *Madison County* changed future apportionments.

(3) He states that the annual payments misapportioned to the cities *by Madison County* is and was governed by § 63–2104.

(4) He states that *Madison County's* liability to transmit city monies would not exist except for *Madison County's* duty "to properly apportion."

(5) Repeating himself, he states that *Madison County's* liability is one created by statute.

Relegated to a footnote, is the hypothesis of his rationale:

The county officials' liability to properly apportion and pay over road and bridge taxes is derivative. It is derived from the primary liability of the county. Since counties cannot act for themselves, the statute is phrased in terms of "coun-

---

**3.** An interesting bit of light reading which suggests why they were not so authorized is found

in *Rankin v. Jauman,* 4 Idaho 394, 39 P. 111 (1895).

ty officials"—persons who can act of their own volition and who are charged with performing the county's duties. In the instant case, they have no liability if the county has no liability.

One would think, or prefer to, that there would be at least one other member of the Court besides myself who finds this logic not within the bounds of any known legal legerdemain. Beginning at the outset of his opinion Justice Bakes for the ensuing five pages states what the *county* did, what the *county's* liabilities and duties were. Then buried in a footnote he concedes that "counties cannot act for themselves." And, notwithstanding that he has displayed the contents of § 63–2104 in the same footnote, and notwithstanding that § 63–2104 is specifically directed at mandating (must) the county auditor to take appropriate action disbursing the designated funds to the proper recipients, he states that "the statute is phrased in terms of 'county *officials*'—persons ... who are charged with performing the county's duties." No one can say this is not ingenious. It is *clever*, no doubt, but extremely fallacious. The *county* has no duty to apportion; the *county* has no money to apportion. The county as such cannot touch that designated tax money. From the time that it is received until it is paid out, that money is under the dominion of the county treasurer. All of the commissioners' orders in the world could not pry it loose. But the county commissioners are not responsible for keeping the money, or, where it goes. The responsibility there lies with, first the treasurer, and then the auditor.

In the earlier opinions released in February of this year, I attempted to bring my associates' attention to the Constitution of the State of Idaho. Article XVIII, § 6 has been amended eleven times since the Constitution was adopted, usually to accommodate changing times. Certain language contained therein in 1889, however, has not changed one whit throughout the various amendments, and, although once again indulging in wasting time, ink, and paper on eyes which will not see, I quote it:

> The legislature shall provide for the strict accountability of *county* ... *offi-*

*cers* for all ... public and municipal moneys which may be paid to them, or officially come into their possession.

As I wrote earlier, there is in this case no involvement of malfeasance. It is at least agreed by all that the County Auditor made a clerical mistake. As a result of that mistake, the county became the gratuitous recipient of city monies over which two county officers had sole dominion, the treasurer to whom the road tax funds were paid, and the auditor who mistakenly misapportioned it.

The law in this state has been, up until today, that a person or entity—be it a bank, a county, or John Doe—who is unjustly enriched by being handed some other person's or entity's money, in equity and good conscience must return it.

Today that does not happen. Instead of doing justice, the Court has made a gross sow's ear out of a silk purse.

My views of the interrelationship, if any, of the various county officers—constitutional officers, that is—have been obtained solely by the teachings of the College of Law faculty at the University of Idaho, Moscow, Idaho, and by reading Idaho case law, in which respect I am much indebted to a fifth grade English teacher, Tillie Johnson, at the Washington Grade School in Pocatello, Idaho. There is comfort to be taken in recently finding that my views are much akin to those entertained at the office of the Idaho Attorney General, as set forth in an opinion rendered two years ago. Similar to my February 1988 opining citing to and excerpting portions of art. XVIII, § 6, Idaho Constitution, the opinion of the Attorney General, as pertinent here, reads:

> County offices are established by art. XVIII, § 6, Idaho Const., which states, in pertinent part:
>
> > The legislature by general and uniform laws shall, commencing with the general election in 1970, provide for the election biennially, in each of the several counties of the state, of county commissioners and a coroner, and for the election of a sheriff and a county assessor and, a county treasurer, who is

ex officio public administrator, every four (4) years in each of the several counties of the state.... The clerk of the district court shall be ex officio auditor and recorder.... No other county offices shall be established.... The county commissioners may employ counsel when necessary. The sheriff, county assessor, county treasurer, and ex officio tax collector, auditor and recorder and clerk of the district court shall be empowered by the county commissioners to appoint such deputies and clerical assistants as the businesses of their office may require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners.

Thus, there are six county offices: commissioner, coroner, sheriff, assessor, treasurer, and clerk of the district court. Of these, the sheriff, assessor, treasurer, and clerk may appoint deputies and assistants as authorized by the county commissioners.

The text of art. XVIII, § 6, neither allows nor forbids commissioners to regulate deputies of other officers. Further, there is no Idaho law directly addressing the commissioner's power to establish a mandatory countywide personnel system. There is, however, a substantial body of Idaho authority defining the general contours of commissioners' power under art. XVIII, § 6, and delineating specific powers under that section. From these authorities one can draw conclusions about particular types of countywide personnel ordinances.

As a general principle, *the various county offices should be viewed as being independent of one another.* The Idaho Supreme Court has held that the commissioners may not assume the duties of other offices. *Meller v. Board of Commissioners* 4 Idaho 44, 35 P. 712 (1894); *Clark v. Board of Commissioners,* 98 Idaho 749, 754, 572 P.2d 501, 506 (1977); *Gorman v. Board of Commissioners,* 1 Idaho 553 (1874). The *Gorman* court stressed the fact that *each officer is an elected official in his or her own right.* From these cases, one can conclude that *the commissioners are not above the other officers.*

Opinions of the Attorney General, No. 86–10, August 21, 1986 (emphasis supplied).